Argued November 16, 1976, reversed January 10, reconsideration denied
February 16, petition for review denied March 29, 1977

STATE OF OREGON, *Appellant,*

*v.*

NICKODEMAS TUCKER, *Respondent.*

(No. 76-3448, CA 6781)

558 P2d 1244

Donald L. Paillette, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Gary L. Hooper, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Schwab, Chief Judge, and Lee and Richardson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

The state appeals from an order sustaining defendant's demurrer to a criminal complaint which charged a violation of ORS 166.240,[1] and stated that the defendant

"* * * did unlawfully and knowingly carry concealed on his person a set of 'nunchaku sticks' which could be used to injure the person and property of another * * *."

Defendant's demurrer contended

"* * * that the facts stated in the instrument do not constitute an offense in that the Statute relied upon is so vague as to deny the Defendant due process of law, ORS 135.630(4) And, in addition, the statute does not bar the use of nunchaku sticks. * * *"

The district court sustained the demurrer, finding that "* * * the phrase 'or any instrument by the use of which injury could be inflicted upon the person or property of any other person' contained in ORS 166.240 is unconstitutional for vagueness * * *."

The circuit court on appeal sustained the demurrer on the same ground and the state appeals.

■ Legislative acts are presumptively constitutional and a party asserting the contrary carries the burden of establishing the lack of constitutional validity beyond a reasonable doubt. *Tompkins v. District Boundary Board,* 180 Or 339, 177 P2d 416 (1947); *Amer. F. of L. et al. v. Bain et al,* 165 Or 183, 106 P2d 544 130 ALR 1278 (1940); *State v. Bailey,* 115 Or 428, 236 P 1053 (1925). In determining if a constitutional challenge to a statute on grounds of vagueness can be sustained we must apply several established rules of statutory construction.

■ "Void for vagueness" emanates from the principle

---

[1] "Any person who carries concealed about his person in any manner, any revolver, pistol, or other firearm, any knife, other than an ordinary pocketknife, or any dirk, dagger, slung shot, metal knuckles, or any instrument by the use of which injury could be inflicted upon the person or property of any other person * * *." ORS 166.240(1).

[ 31 ]

that criminal acts must be sufficiently certain to inform the public what the legislature intended to prohibit or allow. Our Supreme Court in *State v. Bailey, supra,* set out this basic guideline:

> "A valid criminal law must definitely show with reasonable certainty what acts or omissions the lawmaking body intended to prohibit and punish * * * [b]ut reasonable definiteness * * * is all that is required * * *." 115 Or at 432.

A statute will thus be stricken if it is not "* * * sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. * * *" *Connally v. General Const. Co.,* 269 US 385, 391, 46 S Ct 126, 70 L Ed 322 (1926). What is sufficiently explicit is to be determined by a reading of the statute in light of what the legislature intended with a view to upholding the statute if at all possible. A leading Oregon case, *State v. Anthony,* 179 Or 282, 169 P2d 587 (1946), expressed the appellate duty in these words:

> "Notwithstanding the established rule that indefinite statutes are subject to condemnation under the 14th Amendment, it cannot be said that every statute containing broad and indefinite prohibitions is to be held unconstitutional as wanting in due process. A criminal statute passed pursuant to the police power should be stricken down for indefiniteness only if it cannot be saved wholly or in part by judicial application of the rules of statutory construction. * * *" 179 Or at 292.

The test is whether the general words of the statute can properly be limited to conduct the legislature intended to suppress. *State v. Anthony, supra; State v. Opie,* 179 Or 187, 170 P2d 736 (1946). *See also State of Oregon v. Wojahn,* 204 Or 84, 282 P2d 675 (1955); *City of Portland v. Goodwin,* 187 Or 409, 210 P2d 577 (1949); *State ex rel Juv. Dept. v. D.,* 27 Or App 861, 557 P2d 687 (1976).

A recognized rule of statutory construction allows the general terms of an act to be modified and limited by the enumeration of specific examples preceding the general language. *State of Oregon v. Brantley,* 201 Or

637, 271 P2d 668 (1954); *State v. Rackle,* 55 Haw 531, 523 P2d 299 (1974). The reasoning is if the legislature had intended the general phrase to be a significant expansion of the weapons enumerated it would be a meaningless restriction to list any specific weapon.

■ The phrase here in controversy, "any instrument by the use of which injury could be inflicted upon the person or property of any other person" is preceded by a specific list of weapons, i.e., firearms, knives, metal knuckles, and slung shot. We construe this phrase to embrace those items which are similar in nature to the enumerated objects, and are designed and intended primarily as weapons to inflict bodily injury or death. Accordingly we hold this statute applies to items not enumerated which are designed and intended primarily to inflict injury on the person or property of another.

■ Defendant argues in support of the demurrer that the general phraseology of the statute could be used to prohibit carrying of rattail combs, letter openers, screwdrivers, ballpoint pens and like items which could be used to inflict injury. This argument well illustrates our construction of the statute. We recognize that an ordinary instrument may become a deadly weapon by its use; however, as we construe the statute these items would not be included since they are not designed primarily as weapons to inflict injury.

■ Given the construction of the statute we have applied, nunchaku sticks fit within the prohibition of the general terms. They are primarily designed and intended for use in combat with the purpose of causing injury or death. Indeed, the legislature has recognized their character by including them specifically as a dangerous or deadly weapon regulated by ORS 166.220.[2]

---
[2] "Any person who attempts to use, or who with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, or any loaded pistol, revolver or other

█ Defendant urges nunchaku sticks have a practical as well as destructive purpose in the recreational area of "martial arts." By their very nature "martial arts", using implements in the demonstration, involves weaponry, and a recreational "martial arts" use of nunchaku sticks merely demonstrates their character as weapons. An exception under the statute for recreational use is a legislative determination.[3]

The demurrer should be overruled.

Reversed.

---

firearm, or any instrument or weapon of the kind commonly known as a blackjack, slung shot, billy, sandclub, sandbag, metal knuckles, *nunchaku sticks,* bomb or bombshell, or any other dangerous or deadly weapon or instrument * * *." ORS 166.220(1). Emphasis added.

[3] The legislature included a specific exception in the statute for "an ordinary pocketknife." ORS 166.240(1).