Argued June 19, reversed November 14, 1978

# STATE OF OREGON, *Respondent,*
*v.*
# DOUGLAS PRUETT, *Appellant.*
## (No. 7740695, CA 10202)
586 P2d 800

Hollis K. McMilan, Portland, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were James A. Redden, Attorney General, Al J. Laue, Solicitor General, and Jan P. Londahl, Assistant Attorney General, Salem.

GILLETTE, J.

**GILLETTE, J.**

Defendant was convicted of carrying a concealed weapon in violation of ORS 166.240(1).[1] The complaint charged that he:

 "* * * did unlawfully, recklessly and with criminal negligence carry concealed about his person, *a knife, other than an ordinary pocketknife,* which could be used to injure the person and property of another * * *." (Emphasis added.)

Defendant demurred to the complaint, claiming that the emphasized language—which is a direct quote from the statute—is unconstitutionally vague and that the statute is therefore void. The demurrer was overruled, and defendant thereafter was found guilty in a trial to the court.

Defendant appeals, arguing that the demurrer should have been sustained and, in the alternative, that the trial court applied an incorrect legal standard in finding the knife—a "sportsman's" knife with a three and one-half inch blade which folded manually into the handle but locked when in the fully open position—to be within the statutory prohibition.

When a statute is challenged for vagueness, our office is to sustain the statute if we can by giving it a constitutional construction either by narrowing its scope,[2] or by finding the statute constitutional as applied to the defendant in the particular case.[3] We are not called upon to make such an effort here, however, because we consider the knife in question to

---

[1] ORS 166.240(1) provides:

 "* * * any person who carries concealed about his person in any manner, any revolver, pistol, or other firearm, any knife, other than an ordinary pocketknife, or any dirk, dagger, slung shot, metal knuckles, or any instrument by the use of which injury could be inflicted upon the person or property of any other person * * *."

[2] *See, e.g., State v. Tucker,* 28 Or App 29, 558 P2d 1244 (1977) (construing another section of this same statute).

[3] *See, e.g., State v. Drummond,* 6 Or App 558, 489 P2d 958 (1971).

be an "ordinary pocketknife" under *any* construction which might reasonably be given to the statute.

Accordingly, defendant's conviction is reversed.

## SCHWAB, C. J.

I concur with the majority opinion since it disposes of the case without reaching the constitutional issue. I wish to note, however, that if it were necessary to reach the constitutional issue I would join in Judge Joseph's specially concurring opinion.

## JOSEPH, J., specially concurring.

I agree that if there is any *reasonable* way to hold a statute constitutional, we should do so, *State v. Tucker,* 28 Or App 29, 558 P2d 1244 (1977). I cannot accept that it is reasonable to uphold a statute by determining as a matter of *law* that a particular knife is as a matter of *fact* "an ordinary pocket knife." That leaves the statute even less certain of meaning than when this litigation began.

The Due Process Clause of the Fourteenth Amendment requires that a statute imposing criminal liability delineate with reasonable certainty the conduct which is prohibited. The basic rule was set forth in *Connally v. General Construction Co.,* 269 US 385, 391, 46 S Ct 126, 70 L Ed 322 (1926):

> "* * * [A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law."

The requirement of reasonable certainty serves not only to enable persons to choose intelligently a lawful course of conduct, but also serves to provide a limitation on the discretion of prosecuting authorities, judges and jurors. *Giaccio v. Pennsylvania,* 382 US 399, 86 S Ct 518, 15 L Ed 2d 447 (1966); *State v. Hodges,* 254 Or 21, 457 P2d 491 (1969).

A statute is not rendered void simply because reasonable jurors may reach different conclusions in applying it:

> "[T]he standard need not be defined with such precision that those affected by it will never be required to hazard their freedom upon correctly foreseeing the manner in which a matter of degree may be resolved by a jury. * * *" *State of Oregon v. Wojahn,* 204 Or 84, 137, 282 P2d 675, 701 (1955).

As we noted in *State v. Samter,* 4 Or App 349, 352, 479 P2d 237 (1971):

> "* * * The determinative factor is whether there is a reasonable degree of common understanding of what is encompassed within the general terms of prohibition."

The first question to be considered is whether ORS 166.240(1) can reasonably be given a construction which will avoid constitutional difficulties. *State v. Anthony,* 179 Or 282, 169 P2d 587 (1946). In overruling the demurrer, the trial judge stated:

> "[W]hereas I believe that the term 'ordinary pocketknife' is a relatively vague one, I think it can be saved by the statutory construction * * *."

The statutory construction which the judge apparently had in mind is that ORS 166.240 specifically prohibits the concealed carrying of a dirk or dagger, and a pocketknife with a locking blade is the effective equivalent of a dagger. Therefore, he concluded, the knife in question is within the statutory prohibition against carrying a knife "other than an ordinary pocketknife."[1]

I do not accept that analysis, and neither does the majority. Dirks and daggers are designed and are useful almost exclusively for stabbing. The legislature recognized them as distinct genera of knives (most types of which can, of course, be used for stabbing). Although the knife in question has a locking blade that probably would make it more effective as a

---

[1] The state has not attempted on appeal to clarify the court's ruling, but rather argues other grounds in support of the court's conclusion.

[ 187 ]

stabbing instrument, that does not make it the equivalent of a dagger; nor does the reference to dirks and daggers clarify the term "ordinary pocketknife." *Compare State v. Tucker, supra.*[2]

The prohibition in the statute could be construed as limited to a pocketknife having characteristics which make the knife extraordinarily dangerous to person or property, but that construction would not eliminate the primary problem. As noted in *State v. Tucker, supra,* 28 Or App at 33, n 3, by not prohibiting the concealed carrying of an "ordinary pocketknife" the legislature recognized that pocketknives are normally carried for benign purposes. The legislature did not necessarily consider such knives harmless, but rather recognized that some exception to the general prohibition of carrying concealed knives was desirable policy. The difficulty is in determining the scope of the exception. There are many types of pocketknives, with varying combinations of blades and sizes, handle styles and other features, designed for various uses and users. Some pocketknife features might have been designed primarily to make the knife more lethal when used against another person, but other features which would make one knife potentially more dangerous than another (such as the locking blade and the blade length of the knife involved here) are designed to make it useful for lawful purposes and possibly safer. The legislature is capable of clearly stating the scope of a prohibition against knives whose design creates unreasonable chances of unlawful use.[3]

---

[2]In *State v. Tucker,* 28 Or App 29, 558 P2d 1244 (1977), we upheld against a void for vagueness attack the portion of ORS 166.240(1) prohibiting the concealed carrying of "any instrument by the use of which injury could be inflicted upon the person or property of any other person * * *." We construed that phrase to "embrace those items which are similar in nature to the enumerated objects, *and are designed and intended primarily as weapons to inflict bodily injury or death.*" (Emphasis supplied.) 28 Or App at 33.

[3]"Switchblades" are an example. They are specifically covered by ORS 166.510(1), which provides:

The statute does not specify which features or combination of features render a knife non-ordinary. The state argues that both the word "ordinary" and the word "pocketknife" have definite meanings. Each, taken separately, may have a meaning upon which most people would readily agree.[4] That the separate meaning of the words "ordinary" and "pocketknife" are commonly agreed upon, however, is beside the point. The question is whether the term "ordinary pocketknife" has a sufficiently uniform and precise meaning to insure that the public can with reasonable certainty determine in advance what a judge or juror will find within the prohibition. A pocketknife which

"Except as provided in ORS 166.515 or 166.520, any person who manufactures, causes to be manufactured, sells, keeps for sale, offers, gives, loans, carries or possesses an instrument or weapon having a blade which projects or swings into position by force of a spring or other device and commonly known as a switch-blade knife or an instrument or weapon commonly known as a blackjack, slung shot, billy, sandclub, sandbag, sap glove or metal knuckles, or who carries a dirk, dagger or stiletto commits a Class A misdemeanor."

We note that the knife involved is manufactured by an internationally famous Oregon firm and is advertised as suitable for carrying in a pocket on the person.

[4] *Webster's Third New International Dictionary* (1976) defines "pocket-knife" as "[a] knife with a blade folding into the handle to fit it for being carried in the pocket." *Black's Law Dictionary* (4th Ed 1968) defines "ordinary" as follows:

"Regular; usual; normal; common; often recurring; according to established order; settled; customary; reasonable; not characterized by peculiar or unusual circumstances; belonging to, exercised by, or characteristic of, the normal or average individual."

In *People v. Commons,* 64 Cal App 2d 925, 148 P2d 724 (1944), the court concluded without discussion in regard to a statute similar to the one in question here that an exception for an "ordinary rifle or shotgun" was sufficiently certain. An extensive discussion of the word "ordinary" in the "void for vagueness" context is found in *State v. Rogers,* 142 Kan 841, 52 P2d 1185 (1935). The court reached the following conclusions in regard to the word "ordinary" and found the conclusions significant in its "void for vagueness" analysis:

"Perhaps no single word has a more definite meaning in legal parlance or in the language of the street, than the word 'ordinary.' " 142 Kan at 849.

"It is doubtful whether any other single word has such common usage and is so universally applied and understood." 142 Kan at 858.

may be considered "ordinary" in one set of circumstances may be considered highly unusual or uncommon in other circumstances.[5]

I would hold that there is not a reasonable degree of common understanding of what is encompassed within the term "ordinary pocketknife." That general term gives too little notice to the public of what is prohibited. It gives too much discretion to judges and jurors to determine the scope of the prohibition on the basis of their own individual experiences and perceptions.

The statutory prohibition of carrying "a knife, other than an ordinary pocketknife" is void on its face, and the demurrer should have been sustained on constitutional grounds.

Richardson, J., and Buttler, J., join in this specially concurring opinion.

---

[5] At some risk in the face of the statute, the author of this opinion carries with him in a pocket during every waking hour a device known as a "Swiss Army knife." It has two cutting blades, two screwdrivers, a can opener, a bottle opener, a wire stripper, scissors, an awl, a file, a Phillips screwdriver, tweezers, a toothpick (of imitation ivory!)—and a 2½ inch long saw which can cut through a small tree limb in short order. It is seldom used as a knife. Ordinary? Illegal? Who knows?