Argued and submitted March 14, 1980; resubmitted in banc February 12,
reversed and remanded February 23, reconsideration denied April 9,
petition for review denied June 16, 1981 (291 Or 117)

GAFFEY,
*Appellant,*
*v.*
BABB et al,
*Respondents.*

(No. C78-12-114, CA 13882)

624 P2d 616

John Henry Hingson, III, Oregon City, argued the cause and filed the briefs for appellant.

Hugh C. Downer, Jr., Gold Beach, argued the cause for respondents. With him on the brief was Spicer and Downer, Gold Beach.

RICHARDSON, P.J.

THORNTON, J., dissenting opinion.

**RICHARDSON, P.J.,**

Petitioner brought this declaratory judgment action seeking a declaration that a criminal ordinance of the City of Brookings is unconstitutional and to enjoin enforcement of the ordinance. The trial court held that the ordinance was constitutional and petitioner appeals.

Petitioner owns a business establishment, described as a "head shop," which offers for sale pipes, cigarette rolling papers, books, magazines and posters, among other items. A "head shop" was described as "a place of business that is frequented by persons engaged in the use or sale of narcotics or controlled substances." That definition was amplified by the witness as follows:

> "Well, head shops, by way of explanation now so I can answer your question, head shops today have taken on a different posture than they did originally. They're a mixed business now. Record shops where they sell legitimate records, and to entice that particular element, to enhance their business, they also engage in the sale of other items which draw this type of person, those persons engaged in the use, abuse of controlled substances in their shop."

In October, 1978, the City of Brookings adopted an ordinance prohibiting dealing in drug paraphernalia. In December, 1978, petitioner filed a declaratory judgment action alleging that the ordinance was unconstitutional. The city then repealed the ordinance and enacted the ordinance presently under review. The ordinance took effect immediately upon passage, and petitioner challenged the new ordinance in an amended complaint.

Petitioner has closed his shop on advice of counsel for fear he would be subjected to prosecution by the city attorney, however, he would reopen if the ordinance were declared invalid.

Threshold questions are whether the complaint alleges a justiciable controversy, whether petitioner has standing to challenge the ordinance and whether the issue is ripe for decision. Petitioner has not been charged with violation of the ordinance. The complaint alleges that there is a justiciable controversy and that petitioner is suffering irreparable injury and in the future will be harassed by defendant utilizing the ordinance. The complaint further alleges that the ordinance is unconstitutional on its face.

■ Defendants did not raise the issues of justiciability, standing or ripeness in their pleadings nor in a demurrer. In *Cornelius v. City of Ashland,* 12 Or App 181, 506 P2d 182, *rev den* (1973), we suggested that the proper method of raising those issues was by way of responsive pleading and not by demurrer. If the issues, however, are not raised by the parties the court may determine if its adjudicative powers are properly invoked. The parties in a declaratory judgment action who seek judicial determination of the constitutional validity of an enactment may have no incentive to challenge the right of the court to determine the merits of the claim. If we depend entirely on the defendant in a declaratory judgment action to raise the issue of the court's authority to hear the case we may be led into issuing an advisory opinion or deciding an issue which the petitioner has no standing to urge. In *Gortmaker v. Seaton,* 252 Or 440, 450 P2d 547 (1969), the Supreme Court declined to reach the merits of a declaratory judgment on the basis that the petitioner did not have standing to bring the action. The court took that action despite the fact that neither party raised the issue in the trial court.

In this case, petitioner alleged that there is a justiciable controversy and that he would suffer irreparable injury and in the future will be harassed by defendants enforcing the ordinance he claims is unconstitutional on its face. He presented evidence tending to prove his allegations. There is thus evidence from which we can determine if petitioner has standing and if there is a justiciable controversy which is ripe for determination. During oral argument we raised the issue of the propriety of a declaratory judgment action to challenge a penal ordinance. We requested supplemental memoranda on the issue and both parties have complied with that request.

■ It is difficult to formulate a rule that will serve all purposes in determining if a declaratory judgment action is proper to challenge a criminal enactment. At the minimum, a petitioner must establish (1) that there is a genuine controversy between truly adverse parties; (2) that petitioner will be subjected to a particular concrete injury to a demonstrated property right or other substantial interest; (3) that the injury will be immediate and irreparable in

terms of the likelihood of prosecution; (4) that the matter is ripe for adjudication in that there is a precise fact situation sufficient to allow final adjudication of the issue or that a fact situation is unnecessary to test the challenged law because it is alleged to be invalid on its face; and (5) that there are no other pending proceedings in which the legislation can be challenged.

The Declaratory Judgment Act expands the jurisdiction of courts to include those cases where the petitioner's "rights, status or other legal relations" are affected by the challenged enactment. ORS 28.010. The act is to be liberally construed, ORS 28.120. No actual wrong need be committed or loss incurred in order to invoke declaratory relief. The remedy of a declaratory judgment was designed to relieve litigants of uncertainty by adjudicating their rights before any wrong is committed or damage incurred.

There is a general rule that a declaratory judgment action is not available to interpret or challenge a criminal enactment. That rule has been continually eroded by *ad hoc* exceptions and a general trend toward expanding declaratory relief. *Cornelius* demonstrates an exception to the general rule and a recognition of the judicial trend. In discussing the availability of declaratory relief in relation to criminal legislation, we said in *Cornelius:*

"* * * The remedy of declaratory judgment was designed to relieve parties of uncertainty by adjudicating rights and duties *before* wrongs have actually been committed or damages have been suffered. In short, declaratory judgment is preventive justice.

"Such a result is consistent with a perceptible trend toward expansion of the availability of declaratory relief to test the validity and applicability of criminal statutes. Annotation, 10 ALR3d 727 (1966). Strong arguments support the continuation and expansion of this trend. Note, 80 Harv L Rev 1490 (1967)." (Emphasis in original.) 12 Or App at 188.

In conjunction with expanding the trend to make declaratory judgment available as a vehicle to challenge criminal statutes, we noted a further reason to allow declaratory relief in *Cornelius.* Because the ordinance challenged in *Cornelius* provided only for detention but no criminal charge, a person detained would not have an

effective proceeding available to challenge the basis of his detention. In discussing exceptions to the general rule, we said in *Cornelius:*

"A declaration of the validity or applicability of a substantive penal statute has never been denied on the grounds that the plaintiff had the *potential* alternative remedy of just defending a prosecution. *Anthony v. Veach* [189 Or 462, 220 P2d 493, 221 P2d 575 (1950), *appeal dismissed* 340 US 923, 71 S Ct 499, 95 L Ed 667 (1951)]; *Amer. F. of L. et al v. Bain et al* [165 Or 183, 106 P2d 544, 130 ALR 1278 (1940)]; *McKee v. Foster* [219 Or 322, 347 P2d 585 (1959)]; *Mult. Co. Fair Ass'n v. Langley,* [140 Or 172, 13 P2d 354 (1932)]. Instead, a declaration as to the applicability or validity of a criminal statute has only been denied when there is an *existing* alternative effective remedy, i.e., when a prosecution has already been initiated, as was the case in *Nelson v. Knight,* 254 Or 370, 460 P2d 355 (1969)." (Emphasis in original.) 12 Or App at 189.

The precedential value of *Cornelius,* which is the most current discussion of the issue in Oregon appellate opinions, is two-fold. First, Oregon has been aligned with the jurisdictions which have expanded the use of declaratory judgments to challenge the applicability or validity of criminal statutes. Second, declaratory relief will not be denied on the basis that there is a *potential* alternative means of challenging the enactment.

■ Consistent with the statement of the law in *Cornelius,* declaratory relief cannot be denied petitioner on the basis that he has an effective potential remedy by submitting himself to arrest and prosecution. *See Ostrander v. Linn,* 237 Iowa 694, 22 NW2d 223 (1946), cited with approval in *Nelson v. Knight, supra; Anti-Fascist Committee v. McGrath,* 341 US 123, 71 S Ct 624, 95 L Ed 817 (1951).

The general rule prohibiting the use of a declaratory judgment action to challenge a criminal statute is based, *inter alia,* on two essential rationales, which are expressed in the requirements of justiciable controversy, standing and ripeness. One rationale is that courts are loath to issue advisory opinions which do not finally settle a controversy. Second is that constitutional issues should be decided based on a precise fact situation that properly invokes the constitutional issues. *See Gortmaker v. Seaton, supra.*

This case does not involve a request for an advisory opinion emanating from friendly litigants who merely seek a construction of the ordinance. There is a genuine controversy. The defendants, who are, respectively, the chief of police and the city attorney of Brookings, are charged with enforcement of the ordinance. They argue in support of the ordinance. Petitioner owns the only "head shop" in Brookings, and through that enterprise markets items that could subject him to prosecution under the ordinance. Both parties are adversaries in their views of the ordinance's constitutional validity. A judgment as to the facial validity of the enactment will settle this actual controversy. If the ordinance is unconstitutional on its face, the city officials will be foreclosed from enforcing it and petitioner can carry on his business without risking arrest and prosecution under an invalid law. If the ordinance is determined to be constitutional on its face, the city officials will have passed that inevitable hurdle and can proceed to enforce the ordinance as enacted. Petitioner will have a ruling on which to base a decision as to whether he wishes to continue in business.

Petitioner has standing to raise the issue of the ordinance's validity in a declaratory judgment proceeding. A person has standing if his "* * * rights, status or other legal relations" are affected by the ordinance. Standing requires an allegation of a direct, substantial interest in the controversy, ORS 28.020. *See Gortmaker v. Seaton, supra.* Petitioner owns the only "head shop" in the city of Brookings. He sells items that could subject him to prosecution under the ordinance. The evidence presented to the trial court indicates the ordinance was directed at petitioner's establishment. He has a substantial interest in the outcome of this litigation more direct than the other citizens of Brookings. Following enactment of the ordinance, petitioner closed his business on advice of his attorney that the items he was selling were arguably prohibited by the ordinance. The evidence supports an inference that petitioner intends to resume business if the ordinance is declared invalid. Consequently, his right to carry on a business is directly and substantially affected by the ordinance.

Arguably, because he has ceased doing business, petitioner no longer is faced with potential prosecution and thus does not have standing to challenge the ordinance. Petitioner is placed on the horns of a dilemma. If he closes his shop in response to the risk of prosecution under an ordinance he considers invalid, he may then have removed a critical element of standing. The city has accomplished its purpose in forbidding the sale of certain items without having to defend the ordinance. If petitioner, in order to have standing, continues selling the suspect items, he runs the risk of arrest and prosecution, the result he seeks to avoid by his declaratory judgment petition. Petitioner has demonstrated his willingness to abide by the ordinance by closing his business on advice of counsel. All he seeks is a determination whether he can resume business lawfully. The standing requirement should not be interpreted in such a fashion that it places artificial impediments to resolution of bona fide disputes. Petitioner's interests are as substantially affected as those of the petitioners in *Cornelius v. City of Ashland; Anthony v. Veatch; Am. F. of L. et al v. Bain et al; McKee v. Foster; Mult. Co. Fair Ass'n v. Langley, all supra.*

The challenge to the ordinance is that it is unconstitutional on its face. Thus, it is unnecessary to develop a precise fact situation in order to review the merits of that contention. Appellate courts have developed a number of rules and guidelines for analyzing the constitutionality of a criminal statute. One of those rules deserves mention in terms of ripeness for decision in respect to a factual basis for approaching the issue of constitutionality. When a statute is challenged as unconstitutional on its face, it is generally our duty to sustain the statute if we can give it a constitutional construction by narrow interpretation or by finding it constitutional as applied to a particular set of facts. *State v. Drummond,* 6 Or App 558, 489 P2d 958 (1971); *State v. Pruett,* 37 Or App 183, 586 P2d 800 (1978). However, that rule does not require that we decline to review a statute's constitutional validity *unless* presented with a precise factual setting. A demurrer to an accusatory instrument on the ground that the underlying statute is unconstitutional on its face properly raises the issue without resorting to a discrete fact situation. In that respect, a

declaratory judgment complaint alleging that a penal enactment is unconstitutional on its face serves the same purposes as a demurrer in a criminal proceeding. We have not hesitated to approach a constitutional question when raised by demurrer, *e.g., City of Portland v. Elston,* 39 Or App 125, 591 P2d 406 (1979); *State v. Harris,* 40 Or App 317, 594 P2d 1318 (1979), unless, fortuitously, there is evidence accompanying the demurrer which allows us to skirt the constitutional issue. *See, e.g., State v. Pruett, supra.*

In determining if the controversy is ripe for decision in terms of the need for a factual basis, it is proper to analyze the ordinance to determine if it could be construed to be constitutional as applied to any potential fact situation in a criminal prosecution. As subsequently explained in more detail, the definition portions of the ordinance are unconstitutionally vague as applied to any conceivable fact situation. Thus, regardless of the facts the prosecution may develop in a prosecution under the ordinance, it does not reasonably inform the citizens, police or trier of fact what conduct is prohibited. There is no necessity for a precise fact situation in order to determine petitioner's challenge.

It is proper in determining the question of standing to consider the hardship from denying judicial relief. *See Anti-Fascist Committee v. Mc Grath; Cornelius v. City of Ashland, both supra.* The hardships to petitioner if he is denied relief are substantial. He may permanently close an otherwise lawful business for fear of arrest and prosecution. The alternative of violation of the law and a subsequent challenge to its validity is equally unacceptable. Even if petitioner is ultimately found innocent, he must undergo the rigors of criminal prosecution with the attendant public disapproval in order to vindicate his views as to the constitutional validity of the ordinance. *See, e.g., Zeitlin v. Arnebergh,* 59 Cal 2d 901, 31 Cal Rptr 800, 383 P2d 152, 10 ALR3d 707, *cert den* 375 US 957 (1963). The personal damage to a person undergoing a criminal prosecution is not insubstantial as the many cases awarding damages for false arrest and malicious prosecution demonstrate. A citizen should not be required to endure the hardships facing petitioner by a strict construction of the requirements of controversy, standing and ripeness.

Having concluded that the issue is properly before us and that a declaratory judgment action is proper in this instance, we review the merits of petitioner's claim. The ordinance provides in material part:

"*Section 1:*

"It shall be unlawful for any person to knowingly manufacture, deliver, or sell drug paraphernalia or to possess drug paraphernalia with the intent to manufacture, deliver, or sell drug paraphernalia.

"*Section 2:*

"For purposes of this ordinance:

"(a) 'Deliver' means the actual, constructive or attempted transfer from one person to another of drug paraphernalia, whether or not there is an agency relationship;

"(b) 'Manufacture' means the production, preparation, construction, or processing of paraphernalia, and includes any packaging or repackaging of the drug paraphernalia, or the labeling or relabeling of its container;

"(c) 'Drug paraphernalia' means any instrument, device, article, or contrivance used, designed for use, or intended for use in ingesting, smoking, administering, or preparing any controlled substance as defined in ORS 475.015.

"* * * * *"

The ordinance contains an exception for instruments used in the lawful administration of drugs. The penalty provided is a maximum fine of $500 and up to six months incarceration.

Petitioner challenged the ordinance under a number of constitutional theories. Because we determine that the ordinance is vague and thus violative of due process of law, we will not address petitioner's remaining contentions.

The United States Supreme Court, in *Colautti v. Franklin,* 439 US 379, 99 S Ct 675, 58 L Ed 2d 596 (1979), reiterated an often articulated standard for determining if an enactment is void for vagueness:

"It is settled that, as a matter of due process, a criminal statute that 'fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute,' * * * or is so indefinite that 'it encourages

arbitrary and erratic arrests and convictions,' * * * is void for vagueness. * * * 'This appears to be especially true where the uncertainty induced by the statute threatens to inhibit the exercise of constitutionally protected rights. * * *' " (Citations omitted.) 439 US at 390.

In Oregon, the rule was stated as follows in *State v. Hodges,* 254 Or 21, 457 P2d 491 (1969):

" 'It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case. * * *' " 254 Or at 25. (Citations omitted.)

■　When a legislative enactment is challenged as unconstitutionally vague, it is our obligation to interpret the statute, if possible, in a manner which will result in a finding of constitutionality. *City of Portland v. White,* 9 Or App 239, 495 P2d 778, *rev den* (1972); *State v. Yancey,* 32 Or App 477, 574 P2d 358 (1978). But that obligation does not require us to engage in tortured analysis or to amend the enactment by inserting definitions and limitations not adopted through the legislative process or to delete terms enacted.

■　The portion of the ordinance we find unconstitutionally vague is the definition of "drug paraphernalia" in section 2(c), *supra.* The essence of that subsection defines "drug paraphernalia" in terms of the use of the instrument, device, article or contrivance. It is not the use to which it is put in the hands of the manufacturer or seller, but the use made of the item in the hands of the ultimate consumer.

Both parties presented evidence by the testimony of persons who had established expertise in enforcement of drug use laws. The testimony indicated that there are myriad items that can be and are used by drug abusers. The range of items that could be considered drug paraphernalia is limited only by the ingenuity of illicit drug users. For example, the testimony indicates that several common household items or items available in the general range of retail stores have been adapted spontaneously as an aid in illegal drug preparation or ingestion. A common electrical alligator clip is often used to hold a marijuana cigarette in

order that it may be consumed to its full extent. A pull tab from an aluminum beverage can has been used for the purpose of ingesting cocaine into the nostrils. A small pocket mirror and razor blade is often used to separate powdered drugs such as heroin or cocaine into smaller proportions. Most of the items identified or described by the expert witnesses have dual uses; one use for which they were originally manufactured and a second use when adapted for illegal preparation or administration of controlled substances. The number or type of items that could come within the purview of the ordinance is limited only by the use to which the ultimate consumer puts the item.

The city argues that the generality of the description can be cured by expert testimony at a trial for violation of the ordinance. The contention appears to be that recognized experts can determine if a particular item is used or intended for use in the illegal preparation or administration of drugs. By this method, the city argues, a judge or jury can be informed as to the character of the item the accused is charged with manufacturing, selling or delivering. The difficulty with that argument is that it is the antithesis of the requirement that a penal ordinance or statute inform the public and law enforcement personnel of the standard of conduct required. The ordinary citizen should not have to depend on the testimony of an expert at trial to determine if his conduct is prohibited by the ordinance. The law enforcement agencies must also have standards of enforcement in order that enforcement of the ordinance will not be arbitrary or capricious. Expert testimony presented in the adversary setting of a trial does not provide standards for the persons whose conduct is sought to be regulated or the police charged with enforcement of the ordinance.

In determining whether an enactment is vague on its face we need not review it in terms of an actual fact situation. The evidence presented in this case, however, serves to illustrate the difficulty in determining what items are considered drug paraphernalia. The conclusions of the experts who testified regarding items that could be considered drug paraphernalia were based in large measure on the actual use of the described item. A criminologist for the Oregon State Police testified that his conclusion

that certain items are drug paraphernalia was based on his examination of these items, in 98 percent of which he discovered a residue of a controlled substance. The other two experts, who were police officers, likewise testified that their experiences demonstrated the items they identified as drug paraphernalia had actually been used in the process of illegal drug ingestion. The ordinance here in question does not regulate the use of the items but seeks to regulate the manufacture, sale or delivery of the item prior to use. Thus the sale of an electrical alligator clip could be determined by an expert to be the sale of drug paraphernalia on the basis that alligator clips are, in the experience of the expert, used for smoking marijuana cigarettes.

In *State v. Yancey, supra,* we upheld a statute prohibiting the possession of gambling records (ORS 167.132) in the face of a contention that the statute was unconstitutionally vague on its face. We held that the knowledge requirement of the statute rescued it from vagueness. The relevant portion of the statute provides:

"(1) A person commits the crime of possession of gambling records in the second degree if, with knowledge of the contents thereof, he possesses any writing, paper, instrument or article:

"(a) Of a kind commonly used in the operation or promotion of a bookmaking scheme or enterprise; or

"(b) Of a kind commonly used in the operation, promotion or playing of a lottery or numbers scheme or enterprise."

We stated:

"This requirement of knowledge alleviates any vagueness problem since only a person who the state shows had knowledge that the possessed object is of a type commonly used in a gambling scheme can be convicted.* * * " 32 Or App at 480.

The rationale utilized in *State v. Yancey, supra,* is not readily applicable to save the ordinance here at issue. Gambling records, once made, have only a use as gambling records. The pencil and paper used to make the records may have many purposes but once pencil is applied to paper to make a record, the use of the paper is narrowed to one purpose, i.e., records commonly used in a gambling scheme.

The ordinance here challenged provides:

"It shall be unlawful for any person to *knowingly* manufacture, deliver, or sell drug paraphernalia * * *." (Emphasis added.)

The knowledge by the person charged, that the item manufactured, delivered or sold is drug paraphernalia, adds little to the definition of what can be lawfully manufactured, delivered or sold. The items described as drug paraphernalia are much like the pencil and paper used to make gambling records. A person who possesses a pencil and paper with the knowledge they are going to be used to make gambling records is not in violation of the statute. Once the gambling record is made with the possessor's knowledge, all the elements of the statute are supplied and the gambling records have no other use.

The knowledge requirement of this ordinance does not supply the missing standards to determine what is and is not included in the definition. A proprietor of a hardware store may offer alligator clips for sale fully aware that the clips are often used to smoke marijuana cigarettes in addition to their use in electrical repair. A druggist may sell hand mirrors and razor blades or cigarette rolling papers with the knowledge that these items are used or intended for use by the consumer for illegal drug preparation or ingestion. A grocery store clerk may sell beverages in aluminum cans knowing that the pull tabs of the cans are used to ingest cocaine into the nostrils. Applying the rationale of *Yancey* to uphold the statute would arguably make these merchants liable for prosecution. An item which has a legitimate as well as an illegal purpose, depending upon the use to which it is ultimately applied, does not change its character simply by the knowledge of the person manufacturing, selling or delivering it.

It is urged that the analytical approach in *State v. Tucker,* 28 Or App 29, 558 P2d 1244, *rev den* 277 Or 491 (1977), can be used to uphold the definition portion of this ordinance. In *Tucker* we upheld ORS 166.240, which prohibits the carrying of concealed weapons:

"* * *[A]ny person who carries concealed about his person in any manner, any revolver, pistol or other firearm, any knife, other than an ordinary pocketknife, or

any dirk, dagger, slung shot, metal knuckles, *or any instrument by the use of which injury could be inflicted upon the person or property of any other person* * * *." (Emphasis added.)

Defendant alleged that the emphasized portion of the statute was unconstitutionally vague. We held:

> "The phrase here in controversy * * * is preceded by a specific list of weapons, i.e., firearms, knives, metal knuckles, and slung shot. We construe this phrase to embrace those items which are similar in nature to the enumerated objects, and are designed and intended primarily as weapons to inflict bodily injury or death. Accordingly we hold this statute applies to items not enumerated which are designed and intended primarily to inflict injury on the person or property of another." 28 Or App at 33.

In *Tucker* we determined what the legislature intended by the general phrase by looking at the specific examples of prohibited weapons included in the statute. From this analysis we determined the legislature intended to prohibit carrying of weapons which possessed the common characteristic of those enumerated. The statute contains a legislative guide as to the meaning of the general description. The same cannot be said of the ordinance in question. The ordinance does not contain specific examples of the items the city commission intended to prohibit. In addition, the term "manufacture" used in the ordinance is defined to include not only the making of an item but also labeling or repackaging of an item. Consequently, an electrical alligator clip when repackaged and labeled as a "roach holder" is the manufacture of drug paraphernalia. This would be so under the ordinance even though the alligator clip was designed and intended primarily as an electrical connector.

The major ambiguity in defining drug paraphernalia in terms of the design of the item is the lack of any design characteristics that distinguish the lawful purposes from the unlawful purposes. In *Tucker* we were dealing with a class of items, weapons, which have a common distinguishing characteristic that is readily recognizable and separates items designed as weapons from items not so designed but perhaps usable as such.

In *Tucker* we noted there are a number of common items such as rat-tail combs, letter openers, screwdrivers or ball point pens which can be used to inflict injury. We concluded that they did not fall under the general definition of the statute reviewed in *Tucker* because they were not designed primarily as weapons. The fact that these common items may be intended by the possessor to be used as weapons did not include them in the definition. Consequently, the intention to use the item in a prohibited fashion does not make it a prohibited item under the *Tucker* rationale.

The drug paraphernalia ordinance prohibits more than selling or delivering items designed for illegal drug use. It is broad enough to cover items used or intended for use. It thus cannot be restricted by judicial construction to apply only to items *designed* primarily for illegal drug use. The rationale of *Tucker* does not save the ordinance.

The Drug Enforcement Administration of the United States Department of Justice drafted a Model Drug Paraphernalia Act to assist state and local governments in enacting drug paraphernalia statutes which would withstand constitutional attack. *Drug Enforcement,* March 1980, Vol 7, p 28. Statutes and ordinances based on the Model Act have had a checkered career in the courts. For example, in *Tobacco Accessories and Novelty, Etc. v. Treen,* 501 F Supp 168, (E.D. La 1980), the District Court upheld the Louisiana statute based on the Model Act. The principal challenge was that the statute was unconstitutionally vague in defining drug paraphernalia. The United States Court of Appeals for the 6th Circuit declared several local ordinances modeled on the Model Act to be unconstitutionally vague regarding the critical definition. *Record Revolution No. 6, Inc. v. City of Parma,* 638 F2d 916 (6th Cir 1980). The opinions of those two courts are diametrically opposed and the conflict in analysis is not resolvable. It would seem the Circuit Court's opinion would have more weight and it appears to be the better reasoned opinion.

The definition of drug paraphernalia in the ordinance offers no clear standard by which a person of common understanding could determine what items fall within

its prohibition. The law enforcement agencies, the courts and juries are not supplied a sufficient standard to guard against arbitrary or *ad hoc* enforcement. The ordinance is unconstitutionally vague on its face. The judgment is reversed and the case is remanded for entry of a judgment that the ordinace is unconstitutional. Because we determine the ordinance is unconstitutional, we are confident the defendants will not seek to enforce it, and it is therefore unnecessary to enjoin enforcement.

Reversed and remanded.

**THORNTON, J.,** dissenting.

The majority concludes that a justifiable controversy exists in this case. I disagree. In my view the trial court erred in assuming jurisdiction and granting declaratory relief.

This is a penal or criminal ordinance. The general rule is that a declaratory judgment proceeding does not lie to obtain an advisory opinion as to the construction of a criminal law. *See Gortmaker v. Seaton,* 252 Or 440, 450 P2d 547 (1969); *Nelson v. Knight,* 254 Or 370, 460 P2d 355 (1969). In *Gortmaker,* the court pointed out the rationale of this rule in the following language:

"The construction of the statutes involved in this litigation can be accomplished, if necessary, in an adversary proceeding any time a defendant demurs to an indictment on the grounds that the indictment does not charge a crime. If a defendant should assert that the rules under which he is being prosecuted were not properly promulgated, the trial court can decide the question and either party can appeal. ORS 138.020. When a simple and convenient means is at hand for testing a law, a declaratory suit between friendly parties will not lie. [Citations omitted.]" 252 Or at 444, 450 P2d 547.

The majority relies on *Cornelius v. City of Ashland,* 12 Or App 181, 506 P2d 182, *rev den* (1973), for the proposition that declaratory judgment was proper in this case. In *Cornelius,* we allowed declaratory relief because the ordinance there challenged did not provide for charging an individual with a crime. The ordinance authorized the police to take a person into custody and detain him for a

certain period for investigation without charging the individual with a crime. Consequently, there would be no criminal proceeding in which the affected person could challenge the ordinance. *Cornelius* is therefore not in point here in that there the only avenue open to plaintiff to challenge the ordinance was by declaratory judgment. It was impossible for plaintiff to be prosecuted for violating that ordinance. Therefore, he did not have the usual remedy of demurring to the indictment or complaint--as suggested in *Gortmaker*--that is normally available to any citizen desiring to challenge a substantive criminal statute. Here there is no reason why the usual remedy to challenge a substantial penal statute or ordinance is not available to this plaintiff. Accordingly, I would reverse and remand with instructions to vacate the judgment entered in the trial court.

While it is true that our Supreme Court has in a number of instances granted declaratory relief with reference to criminal statutes (see dissenting opinion in *Cornelius*), an examination of those cases will show that the issue of justiciable controversy was never raised or considered in any of these cases. The same appears to be true of the cases wherein declaratory relief was granted as to civil statutes and ordinances, with the exception of *Recall Bennett Com. v. Bennett et al,* 196 Or 299, 249 P2d 479 (1952), in which the officials were only nominal parties.

Roberts, Warden, and Van Hoomissen, JJ, concur in this dissent.