Argued and submitted November 2, 2012, affirmed July 10, 2013, petition for review allowed January 30, 2014 (354 Or 735)

Marquis COUEY,
an individual,
*Plaintiff-Appellant,*

*v.*

Kate BROWN,
in her official capacity as
Secretary of State for the State of Oregon,
*Defendant-Respondent.*

Marion County Circuit Court
10C14484; A148473

306 P3d 778

Linda K. Williams argued the cause and filed the briefs for appellant.

Anna M. Joyce, Solicitor General, argued the cause for respondent. With her on the brief was John R. Kroger, Attorney General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Plaintiff brought this action seeking to enjoin defendant, the Secretary of State, from enforcing a statute under which a person "may not obtain signatures on a petition or prospective petition for which the person is being paid and, at the same time, obtain signatures on a petition or prospective petition for which the person is not being paid." ORS 250.048(9). Plaintiff also sought a declaration that the statute violated state and federal constitutional free expression rights. The trial court granted defendant's motion for summary judgment on the ground that, although the case presented a live and justiciable controversy when it was filed, its justiciability had ended by the time summary judgment motions were filed because the period during which petitions could be circulated for signatures had elapsed and, with it, plaintiff's status as a registered paid circulator. Plaintiff argues on appeal, as he did below, that his action remains justiciable, contending that it is not moot because the statute poses a continuing threat to the exercise of his constitutional rights of free speech and assembly, and he continues to have standing because several statutes confer it on him regardless of the fact that there is no current or impending enforcement action against him. He also argues that, even if the case is moot and he does not have traditional standing, the case is nonetheless justiciable. Its mootness is not fatal because, due to the short period during which a petition may be circulated for signatures, his challenge—even if it is not presently a live controversy—is "capable of repetition" and "likely to evade judicial review in the future." ORS 14.175. And his lack of traditional standing is not fatal because his challenge alleges deprivation of free speech, thereby triggering application of the so-called "First Amendment overbreadth" doctrine that allows plaintiffs to base constitutional free expression challenges on the rights of others. We conclude that the case is moot and that the "capable of repetition and evading review" exception does not apply to this case because judicial review of a challenge to the statute is not "[un]likely." We therefore affirm without reaching the issue of plaintiff's standing.

# I. BACKGROUND

A. *Facts*

The trial court made extensive findings of fact, and neither party makes challenges to any of them. We therefore review to determine whether, on those facts, defendant was entitled to prevail as a matter of law. ORCP 47 C. When this case was filed, plaintiff was registered and employed as a circulator to obtain signatures for two initiative petitions, Initiative Petition (IP) 28 and IP 70, aimed at qualifying for the November 2010 ballot. *See* ORS 250.048(1) (paid signature gatherers must register and complete training program). He also wanted to circulate petitions for another initiative, IP 42, as a volunteer. ORS 250.048(9), however, prohibits a person who is a paid petition circulator from, "at the same time, obtain[ing] signatures on a petition or prospective petition for which the person is not being paid." Violations of that prohibition result in significant penalties. The Secretary of State "may not include any signatures obtained in violation of this subsection in a count *** for purposes of determining whether a state initiative *** contains the required number of signatures of electors," ORS 250.048(9), and the culpable circulator could be subjected to a civil penalty, ORS 260.995.

Plaintiff did not circulate petitions as a volunteer for IP 42. He did circulate petitions as a paid circulator for IP 28 and IP 70, but his registration automatically expired on July 2, 2010, four months before the November 2010 election, when the time for submitting petitions to the Secretary of State also expired. *See* ORS 250.048(3)(c) (providing for automatic expiration of registration for prospective petitions once deadline for submission to Secretary of State has arrived); *see also* Or Const, Art IV, § 1(2)(e) (deadline for submitting petitions is four months before election).

B. *Procedural history*

While he was a paid circulator, plaintiff made several inquiries to defendant seeking clarification of various statutory provisions, including ORS 250.048(9), the ban on simultaneously circulating petitions as a paid circulator

and a volunteer. He also initiated this action, seeking a declaration that the ban violated his state and federal constitutional rights and an injunction prohibiting defendant from enforcing the ban. After extensive discovery, the parties submitted cross-motions for summary judgment. Meanwhile, as noted above, the time for collecting signatures for the November 2010 election passed. The court then issued a letter opinion concluding that, "under both state and federal law, plaintiff lacks standing and therefore the case is moot." The court explained:

> "[A]t the time the complaint was filed, plaintiff had standing ***. However, by the time the summary judgment motions were heard, that was no longer the case. The 2010 election is over and plaintiff no longer seeks relief regarding anything that occurred in that election; he only seeks prospective relief."

The court subsequently granted defendant's motion for summary judgment, denied plaintiff's, and entered judgment dismissing the case. Plaintiff appeals, arguing that he has standing and that the case is not moot.

## II. JUSTICIABILITY, STANDING, AND MOOTNESS

The relationship between justiciability, standing, and mootness is not always simple. "Standing" and "mootness" are two aspects of justiciability; to be justiciable, in other words, the plaintiff must have standing *and* the controversy must not be moot. *Yancy v. Shatzer*, 337 Or 345, 349, 97 P3d 1161 (2004). The two concepts are distinct. Standing deals with *who* can bring a controversy before the court: "'Standing' is a legal term that identifies whether a party to a legal proceeding possesses a status or qualification necessary for the assertion, enforcement, or adjudication of legal rights or duties." *Kellas v. Department of Corrections*, 341 Or 471, 476-77, 145 P3d 139 (2006). Mootness, on the other hand, deals with *what controversies* can be brought before the court. In particular, it focuses on whether "litigation has occurred too soon or too late." *Id.* at 477 n 3. "Cases that are otherwise justiciable, but in which a court's decision no longer will have a practical effect on or concerning the rights of the parties," are moot (because they are too late), *Brumnett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993), as are cases

in which a court's decision will *not yet* have a practical effect on or concerning the rights of the parties (because they are too early, or, in the vernacular, unripe,) *McIntire v. Forbes*, 322 Or 426, 434, 909 P2d 846 (1996). We conclude that this case is moot; therefore, we do not reach the question of standing.

A. *Mootness*

A case is moot if the court's decision in the matter will not have "some practical effect on the rights of the parties to the controversy." *Brumnett*, 315 Or at 405; *Kay v. David Douglas Sch. Dist. No 40*, 303 Or 574, 738 P2d 1389 (1987), *cert den*, 484 US 1032 (1988) (no justiciable controversy over prayer at public school graduation because the event had occurred). The Secretary of State contends that there is no current controversy and the case is moot because plaintiff is no longer seeking to simultaneously circulate petitions as a paid circulator and a volunteer. Plaintiff, on the other hand, acknowledges that he is no longer immediately vulnerable to an enforcement action based on ORS 250.048(9), but argues that the controversy is live because the existence of that statute, as interpreted by the Secretary of State, continues to preclude him from simultaneously circulating petitions as a paid circulator and a volunteer—actions that he intends to take in the future.

Plaintiff's position is not implausible. This court declared in *Cornelius v. City of Ashland*, 12 Or App 181, 188, 506 P2d 182 (1973), that declaratory judgment "was designed to relieve parties of uncertainty by adjudicating rights and duties *before* wrongs have actually been committed." (Emphasis in original.) The line between a legitimate declaratory judgment action seeking to determine rights under a statute that has not been enforced, on the one hand, and a premature, unripe challenge to that statute on the ground that it *might be* enforced, on the other, is not always clear. In *Gaffey v. Babb*, 50 Or App 617, 624 P2d 616 (1981), for example, this court held that the owner of a "head shop" who had closed his business after the city of Brookings passed an ordinance prohibiting such enterprises continued to have a justiciable case because, at the time of the challenge, he was apparently poised to reopen. In *Brumnett*, the

court held that the petitioner's challenge to the application of a rule under which the state could order the petitioner to pay for the cost of his care was moot because the petitioner was "not presently the subject of any order of the state to pay" those costs—*and* because "[t]he state has not said that it intends to seek any reimbursement from petitioner. Rather, one representative of the state has asserted only that it *might* do so some time in the future." 315 Or at 407 (emphasis in original). The implication, then, is that, if the state *had* asserted a future intention to invoke the rule, the case would have remained live.

Further, recent Oregon Supreme Court cases, exemplified by and summarized in *Pendleton School Dist. v. State of Oregon*, 345 Or 596, 200 P3d 133 (2009), also appear to support plaintiff's position. In *Pendleton School Dist.*, the plaintiffs sought declaratory and injunctive relief under Article VII, section 8, of the Oregon Constitution, which requires the Legislative Assembly to "appropriate in each biennium a sum of money sufficient to ensure that the state's system of public education meets quality goals established by law," and under Article VIII, section 3, which provides, "The Legislative Assembly shall provide by law for the establishment of a uniform, and general system of Common schools." As relevant to this case, the *Pendleton School Dist.* plaintiffs "sought relief as to education funding for (1) the 2005-07 biennium, and (2) future biennia." *Id.* at 604. The court rejected the state's contention that the issues were moot. The court reasoned (and, because this reasoning is crucial to the mootness issue in this case, we quote it at length):

> "[T]he state's argument appears to be that a challenge to future budget legislation involves hypothetical future events, not present facts. The state also appears to maintain that the courts cannot grant specific relief through a binding decree, but instead merely would be issuing an advisory opinion * * *.
>
> "We conclude that two cases demonstrate why the state's justiciability argument is flawed. In *Brown* [*v. Oregon State Bar*, 293 Or 446, 449, 648 P2d 1289 (1982)], the Attorney General had filed a declaratory judgment action in circuit court, challenging the Oregon State Bar's opinion that it

would violate legal ethics rules for the Attorney General to give legal advice *ex parte* to an agency director and hearings officer in a contested case (the Attorney General, in fact, had given legal advice under those circumstances). This court concluded that the matter was justiciable:

> "'While the controversy arises from advisory [ethics] opinions [by the Bar], the substance of the controversy concerns the interpretation of a statute. The court is requested to consider a specific set of facts—whether plaintiff [the Attorney General] may give advice upon request to agencies in contested cases where plaintiff's office is not involved in the case, agency rules do not prohibit the conduct[,] and the recipient does not have authority to issue binding orders. The controversy involves present facts, the plaintiff's existing statutory duty.'

"293 Or at 450.

"Similarly, in *Savage v. Munn*, 317 Or 283, 856 P2d 298 (1993), the plaintiffs had contended that Ballot Measure 5 (1990), which became Article XI, section 11b, of the Oregon Constitution, violated the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. This court concluded that the matter was justiciable:

> "'Plaintiffs here are complaining of the manner in which their taxes are capped under Measure 5. The workings of Measure 5 are 'present facts,' not simply possible future events. A binding decree would have the effect of invalidating the proportional reduction scheme contained in [Measure 5]. Such an outcome would hardly be an advisory opinion.'

"*Id.* at 292, (footnote omitted). This court added that, while the record was not clear, 'it appears that, at least as to Lear [one of the plaintiffs], Measure 5 has had some cognizable effect.' *Id.* at 292 n 6.

"We conclude that both *Brown* and *Savage* are analogous to the situation here, and they establish that the present matter is justiciable. The issue whether Article VIII, section 8, imposes a duty on the legislature to fund the public school system at a specified level every biennium presents a set of present facts regarding the interpretation of a constitutional provision; it is not simply an abstract inquiry about a possible future event. *See Savage*, 317 Or

at 292 ("The workings of Measure 5 are "present facts,"" not simply possible future events.'); *Brown*, 293 Or at 450 ('present facts' were 'plaintiff's existing statutory duty' in particular factual context)."

*Id.* at 605-06 (first set of brackets added; additional brackets in original).

One inference that could be drawn from this analysis, as well as from *Cornelius* and *Gaffey*, is that a case is not moot if it requires the court to decide whether a statute or constitutional provision can lawfully be applied to future contemplated events. Because the challenged statutes or constitutional provisions continue to exist, such challenges present a concrete controversy and not "an abstract inquiry about a possible future event," *Pendleton School Dist.*, 345 Or at 606, provided that the declaratory or injunctive relief requested would result in a "binding decree" that would have the effect of "invalidating" the challenged statute or constitutional provision, *Savage*, 317 Or at 292.

The Secretary of State's position, on the other hand, also has significant support in the case law. In a frequently cited opinion—indeed, an opinion cited in *Pendleton School Dist.*—the Supreme Court held that, to avoid mootness even in a declaratory judgment action under ORS 28.010, a "controversy must involve present facts as opposed to a dispute which is based on future events of a hypothetical issue." *Brown*, 293 Or at 449; *accord TVKO v. Howland*, 335 Or 527, 534, 73 P3d 905 (2003) ("To be justiciable, a controversy must involve a dispute based on present facts rather than on contingent or hypothetical events."). In another leading case on mootness, the Supreme Court declared emphatically that a case is live "only when it can affect *in the present* some rights between the parties[.]" *Barcik v. Kubiaczyk*, 321 Or 174, 188, 895 P2d 765 (1995) (emphasis in original). *Brumnett*, which we cited above as impliedly containing support for plaintiff's position—the court observed that the case was moot but hinted that it would not be if the state had "said that it intends to seek any reimbursement" in the future—also declares that "[t]he mere possibility that the state might seek such an order [for reimbursement] at some future date is not sufficient to make dismissal [on the ground of mootness] inappropriate." 315 Or at 407.

The lesson to be drawn from these apparently conflicting cases is that a dispute under the declaratory judgment act is or is not moot depending on the facts of the particular case, and in particular, the degree to which the facts that will make the dispute active are imminent and certain, as opposed to contingent and hypothetical. The inquiry necessarily involves judgment. In the present case, we conclude that the dispute falls on the contingent and hypothetical side of the divide. Plaintiff will actually become vulnerable to enforcement of ORS 250.048(9) only if several events simultaneously occur, none of which is certain: He must (1) remain an Oregon resident, (2) continue to seek employment as a petition circulator, (3) be hired by a chief petitioner, (4) discover an initiative for which he is ready, willing, and able to be a volunteer circulator, and (5) insist on acting as a paid circulator and a volunteer "at the same time"; that is, he must remain unwilling to limit his volunteer circulating activity to "any lunch or other break period for which [he] is not paid to circulate." OAR 165-014-0285. Plaintiff's case is moot.

B. *Capable of repetition, yet likely to evade judicial review*

Plaintiff argues that, even if his case is moot, it is nonetheless justiciable under ORS 14.175. That statute provides:

> "In any action in which a party alleges that an act, policy or practice of a public body, as defined in ORS 174.109, or of any officer, employee or agent of a public body, as defined in ORS 174.109, is unconstitutional or is otherwise contrary to law, the party may continue to prosecute the action and the court may issue a judgment on the validity of the challenged act, policy or practice even though the specific act, policy or practice giving rise to the action no longer has a practical effect on the party if the court determines that:

> "(1)  The party had standing to commence the action;

> "(2)  The act challenged by the party is capable of repetition, or the policy or practice challenged by the party continues in effect; and

> "(3)  The challenged policy or practice, or similar acts, are likely to evade judicial review in the future."

According to plaintiff, he undeniably had standing when he filed this action; the circulators in the future are capable of attempting to circulate petitions as paid circulators and volunteers; and, because the maximum amount of time that any petition may be circulated is two years, and, in fact, the amount of time is typically shorter because a petition may not be circulated until the ballot title process is complete, future challenges—like this one—are "likely" to evade judicial review.

We agree that plaintiff meets the first two criteria under ORS 14.175; he had standing when the case began, and future challenges to ORS 250.048(9) are "capable" of repetition. The difficulty for plaintiff arises under the third criterion. In support of the argument that challenges to ORS 250.048(9) are likely to evade judicial review, he cites *Storer v. Brown*, 415 US 724, 737 n 8, 94 S Ct 1274, 39 L Ed 2d 714 (1974), for the proposition that the United States Supreme Court has held that an election law challenge is not necessarily mooted by the occurrence of the election, because the same challenge will recur in future elections. He also cites several other federal cases, including one from the District of Oregon (*Cooley v. Keisling*, 45 F Supp 2d 818, 821 (D Or 1999)), for the same proposition. The Secretary of State, for her part, cites several Oregon election law cases that have been fully adjudicated through the Oregon Supreme Court in well under two years. *E.g.*, *Crumpton v. Roberts*, 310 Or 381, 798 P2d 1100 (1990); *Ecumenical Ministries of Or. v. Paulus*, 298 Or 62, 688 P2d 1339 (1984).

We conclude that defendant has the better argument, but for one reason only. The same statute that plaintiff correctly cites as authority for an appeal from the Secretary of State's decision to enforce ORS 250.048(9) also provides: "The circuit courts and Court of Appeals, in their discretion, may give precedence on their dockets to appeals under this section as the circumstances may require." ORS 246.910(4). Plaintiff did not take advantage of that statute to request expedited review. Although it is true that cases typically take more than two years to move from filing to issuance of an appellate judgment, especially cases that go to the Supreme Court, we are unwilling at this time to speculate that the courts are *unlikely* to respond positively and with alacrity

to a request for expedited review of a challenge to the constitutionality of ORS 250.048(9). Should such a challenge in the future, with a request for expedited review under ORS 246.910(4), become moot before judicial review is complete, we would be much more inclined to find that such challenges complied with the requirement of ORS 14.175(3).[1]

In sum: When, at the latest, plaintiff ceased to be a registered paid circulator who was prohibited from circulating initiative petitions as a volunteer, this case became moot, and it does not qualify for the mootness exception for cases that are capable of repetition but likely to avoid judicial review. We therefore affirm.

Affirmed.

---

[1] We are also reluctant to conclude that this challenge, in the absence of a request for expedited review under ORS 14.175, qualifies for review because we prefer to avoid constitutional questions when possible. If we were to hold that a particular case qualifies for review under ORS 14.175, we would have to confront the obvious question of whether that statute violates the Oregon Constitution under *Yancy*, 337 Or at 363, where the Supreme Court held in no uncertain terms, "The judicial power under the Oregon Constitution does not extend to moot cases that are 'capable of repetition, yet evading review.'"