Argued September 16, affirmed December 9, 1959

## McKEE v. FOSTER
### 347 P. 2d 585

*Donal D. Sullivan,* Assistant Attorney General, Salem, argued the cause for appellants. On the brief were Robert Y. Thornton, Attorney General, and John D. Nichols, Assistant Attorney General, Salem, and Walter W. Foster, District Attorney of Polk County, Dallas.

*Bruce W. Williams,* Salem, argued the cause for the respondent. With him on the brief were Otto R. Skopil, Jr., and Paul Burris, Salem.

ROSSMAN, J.

This is an appeal by the state from a decree entered by the circuit court in a cause which the plaintiff, Marshall McKee, instituted against the District Attor-

ney of Polk County, Mr. Walter Foster, and the Attorney General of this state, Mr. Robert Y. Thornton, for the purpose of securing a declaratory decree determining whether or not free play pinball machines are gambling devices. Attached to the complaint as an exhibit and forming a part of it is an opinion of the defendant Attorney General dated March 20, 1958, which declares "It is my opinion that these so-called 'free play' machines violate both ORS 167.535 and 167.555." The complaint alleges that the plaintiff owns and operates "certain free play pinball machines." Although it gives an extensive description of the manner in which machines of that kind operate, we will, in lieu of quoting it, take the following from the answer of the two defendants which sets forth the process whereby the machines indicate the right of a winning player to a free play.

> "* * * Scores are credited to the player if he causes a ball to roll into the holes on the board. When a ball rolls into the hole it causes an electronic circuit to be activated which lights one of the squares in the panel on the backboard corresponding to the number assigned the hole. The object of the player is to light three, four or five lights in a row horizontally, vertically or diagonally on the backboard by causing the ball to roll into the appropriate hole on the board. Free plays are scored upon principles similar to Bingo by the lighting of three, four or five lights in a row. * * *"

The complaint avers that "it is just and equitable under the existing circumstances that the Court * * * determine by declaratory judgment that the machine herein is not a gambling device as defined by Oregon Revised Statutes 167.535 and 167.555 and that the legal opinion of the defendant Thornton and its directive be held for naught * * *." The prayer

sought a decree holding that "free play pinball machines of the type herein described and proof of operation offered are not gambling devices as defined by ORS 167.535 and 167.555."

We have quoted parts of the answer which the two defendants filed jointly. Other parts admitted that the defendant Attorney General issued in his "official capacity" the opinion dated March 20, 1958, in which he expressed the belief that "these so-called 'free play' machines violated both ORS 167.535 and 167.555." The answer further alleged that on October 4, 1947, Mr. Thornton's predecessor issued an opinion which declared that "free-play pinball machines were gambling devices as defined by §§ 23-935 and 23-939 O.C.L.A., now compiled in Oregon Revised Statutes as ORS 167.535 and 167.555 respectively." Going on, it alleged that "on or about March 20, 1958, defendant Thornton caused to be issued an Opinion No. 3976, affirming the aforesaid opinion and conclusion reached by Attorney General Neuner." The answer further set forth:

"Plaintiff contends that the free-play pinball machines owned and operated by him in the manner above described are not prohibited nor subject to seizure and destruction under the provisions of ORS 167.405, 167.535 to 167.540 or 167.555."

It continues:

"* * * a real and substantial dispute exists between plaintiff and defendants herein over the lawfulness of free-play pinball machines as herein described under the provisions of ORS 167.405, 167.535 and 167.555."

The cause was submitted to the court upon stipulated facts. The part of the Findings of Fact which recites the manner in which the machine indicates the player's right to a free play is couched in the same

language as the above quoted excerpt of the answer. The findings contain no assertion that the machine issued to the player anything except a free play. Nor do they contain any recital that there comes to the player something of a tangible or physical nature such as a token, slug or card. The Conclusions of Law state:

> "The machine as described in the Findings of Fact does not dispense money, checks, slugs, tokens, credit or other representative of value or evidence of winning capable of being exchanged or redeemed for anything of value, when it returns to the player free plays upon securing a designated score."

There is no claim that the statement just quoted is at variance with the record. The illumination of a part of the machine in the manner indicated by the excerpt which we took from the answer signifies to the player that he has won the right to a free play. In order to avail himself of the right he pushes a button but does not deposit in the machine a coin, slug or anything else. The brief filed by the defendants-appellants (Attorney General and District Attorney) says:

> "It is this distinctive 'free game' feature which is involved in this case and which incidentally gives this and other similar machines the generic term 'free-play pinball machines.' Such machines thus stand apart from machines dispensing coins, tokens, mints or similar items. Cf. State v. Coats, 158 Or. 122, 124-127, 74 P. (2d) 1102."

In other words, the machine with which this case is concerned issues to the player no slug, coin or other item. Likewise, it awards to the player nothing whatever except occasionally a free play.

The Findings of Fact, after mentioning ORS

167.405, 167.535 and 167.555 which are cited in the answer, state:

"* * * Provided, however, that the parties through their attorneys have agreed that the applicable statute to be interpreted is 167.535."

No one claims that the finding just quoted misstates the agreement of the parties. ORS 167.535 reads as follows:

"Any person, firm or corporation who possesses, sets up, conducts, maintains, operates, or is in control of the operation, either as owner, proprietor, lessee, employe or agent, or plays or uses any nickel-in-the-slot machine or other device of like character, which operates as described in this section and which may or may not indicate before the deposit of a coin what it will vend or dispense, shall be punished upon conviction by a fine of not less than $10 nor more than $100, and in default of payment of the fine shall be imprisoned in the county jail one day for each $2 thereof;

"(1) Upon deposit therein of a coin, slug, token or other thing representative of value, the machine may vend or dispense any merchandise, money, check, token, slug, credit or other representative of value or evidence of winning in varying quantities or values, depending upon chance.

"(2) In exchange for a deposit therein, there may be received at occasional or uncertain intervals or in varying quantities or value, from time to time, depending upon chance, any money, check, slug, token, credit or other representative of value or evidence of winning which:

"(a) May be exchanged or redeemed for anything of value.

"(b) May be deposited in such machine or device for further operation or play with the chance of winning or receiving additional merchandise, money, check, token, slug, credit or other representative of value or evidence of winning."

The appellants (defendants) present only one assignment of error. It follows:

> "The court erred in entering its decree permanently enjoining the defendants from curtailing, molesting or confiscating the plaintiff's free-play pinball machines inasmuch as such decree was based upon an incorrect Conclusion of Law that the operation of such machines was not prohibited by ORS 167.535, which was not supported by the undisputed facts."

*Terry v. City of Portland,* 204 Or 478, 269 P2d 544, held that since free play pinball machines lend themselves to gambling purposes the police power of the state may suppress them. The question remains, however, as to whether or not the plaintiff's machines come within the terms of the statute just quoted.

It will be noticed that ORS 167.535 provides that any person who possesses "any nickel-in-the-slot machine   *   *   *   which operates as described in this section" is guilty of the crime proscribed by that section of our laws. That provision is followed by two subsections which contain many similar words but which are concerned with machines of three different kinds. Subsection (1) begins this way, "Upon deposit therein of a coin, slug,   *   *   *" and subsection (2) begins, "In exchange for a deposit therein   *   *   *." Although the latter omits the words "coin, slug   *   *   *" the two provisions mean the same. The deposit activates the machine and thereupon the play begins. From that point on subsection (1) describes a machine which is different from that described in subsection (2). Subsection (1) in specifying the machine with which it is concerned uses these words, "may vend or dispense any merchandise, money, check, token   *   *   *." Thus, the machine to which it is applicable vends or dispenses merchandise, money,

checks, etc. Subsection (2) omits the words "vend or dispense" and, accordingly, the device to which it is applicable is not a vending machine. Subsection (1) renders a machine which vends or dispenses merchandise, etc., "in varying quantities or values, depending upon chance" unlawful. Although one who patronizes a machine of that kind is certain to receive something, however small or great in value it may be, yet because of the fact that the "quantities or values" which come to him are "depending upon chance" the machine is rendered by subsection (1) a gambling device.

We now turn to the machine which subsection (2) outlaws. The first part of that subsection does not employ the term "merchandise." Likewise, subsection (2), as we have already noted, does not use the words "vend or dispense." The player who resorts to the machine described in subsection (2) activates it by depositing in it a nickel, but it is possible that at the end of the play the machine may issue to him absolutely nothing. Or, it is possible that at "occasional or uncertain intervals or in varying quantities or values, from time to time, depending upon chance," there may come to him "money, check, slug, token, credit or other representative of value or evidence of winning." Subsection (2), however, does not stop there. If it did, its language in that phase of the matter would be somewhat similar to that of subsection (1). Subsection (2) goes on to say that the thing received must be of a kind which "may be exchanged or redeemed for anything of value," or if it is not of that kind, it must be something which "may be deposited in such machine or device" for replay bringing to the player upon replay "the chance of winning or receiving additional merchandise, money, check, token * * *."

The defendants-appellants argue that the plain-

tiff's machines fall within subsection (1). They point out that when a player deposits his nickel in a machine the latter may dispense for him only a single play or, if he is lucky, it may give him a sequence of two or more plays. He may thus keep the machine operating upon the deposit of a single nickel as long as his luck continues, or, stated differently, as long as he continues to obtain high scores and win free replays. The defendants-appellants argue that the plaintiff's machines therefore come within this language: "may vend or dispense any * * * other representative of value or evidence of winning in varying quantities or values, depending upon chance." The length of play and hence the "quantities or values" of the play vary in plaintiff's machines, so the defendants argue, according to chance. We may safely assume, since other courts have so held, that a free play is a "representative of value or evidence of winning."

The contention that a free play machine violates subsection (1) is fundamentally unsound in our belief. The words "vend or dispense" found in that subsection, if we employ commonplace meanings, (ORS 161.050), describe an ordinary vending machine into which the player inserts a coin and then stands by while the machine goes through the operation of issuing to him an item of merchandise. The subsection, however, appears to be aimed at machines which, in dispensing mints, gum balls or other items, do so "in varying quantities or value, depending upon chance." Thus, upon one play the patron of the machine may receive a piece of chewing gum and on the next not only gum but also some trinket. The patron of a vending machine stands by idle while the machine goes through the operation incidental to the delivery to him of the desired item. The ordinary "one-arm bandit" slot

machine clearly comes under the terms of this subsection. On the other hand, in a pinball game the player actively participates after he has inserted his nickel. And in order to obtain his free play, if one is awarded to him, he must depress a button on the machine so that the play will continue.

Although the observations just made indicate that the plaintiff's machines are not embraced in subsection (1) another distinction of a more persuasive nature will now receive mention. It consists of the fact that replay machines are the specific subject matter of subsection (2)(b) of ORS 167.535. It seems unreasonable to believe that the legislature, after making specific provision for them in subsection (2) intended that they should also be deemed within subsection (1) which, as we have seen, appears to take as its province vending machines.

Subsection (2) describes machines from which "there may be received at occasional or uncertain intervals, depending upon chance, any money, check * * * which * * * May be deposited in such machine or device for further operation or play with the chance of winning or receiving additional merchandise, money, check, token, slug, credit or other representative of value or evidence of winning." Since replay machines are clearly singled out by this subsection as the latter's province, and since subsection (1) is applicable to vending and dispensing machines, we are satisfied that subsection (1) does not embrace replay machines.

The same difficulty is encountered if one attempts to apply subsection (2)(a) of ORS 167.535 to the plaintiff's machines. This section is applicable to coin-operated machines from which "there may be received at occasional or uncertain intervals or in varying quantities or values * * * depending upon chance,

any money, check, slug, token  \*  \*  \*  which  \*  \*  \*
May be exchanged or redeemed for anything of value
\*   \*   \*." It may seem that this provision con-
templates a situation where the machine issues to
the player something which he may hand to the
machine's owner and surrender for a prize. But when
one takes into view the broad language of the statute
he will conclude that the "something" received need
not be a tangible item. Very likely, a mere light flash-
ing in the machine or other mechanical indication of
a high score would be enough to qualify as a "credit,
or other representative of value or evidence of win-
ning" capable of redemption or exchange. See *People
v. Gravenhorst*, 32 NYS2d 760 (special sessions, Bronx
Co. NYC 1942) ; *Prickett v. State*, 200 P2d 457 (Crim
App Okla 1948). But here again it does violence to
the scheme of the statute to apply subsection (2)(a)
to a replay machine. ORS 167.535 (2)(b) occupies
the field. Since subsection (2)(b) describes with
particularity the kind of replay machine prohibited
by the state, it is reasonable to conclude that subsection
(2)(a) does not apply to replay machines.

ORS 167.535 (2)(b) apparently does not prohibit
pinball machines which give free plays if no coin or
token is dispensed by the machine. The subsection
outlaws only coin operated machines from which "there
may be received" some tangible object which "May
be deposited in said machine" for a replay. Although
"credit, representative of value or evidence of win-
ning" are among the prohibited class of objects which
"May be deposited" in the machine for a replay, we
must conclude, if we construed words in their normal
sense, that for the purposes of this section these things
must be of a tactile, tangible character; that is, they
must be of a sufficiently corporal nature so that
they may be physically "deposited" in the machine.

The defendants argue that it would be an absurdity to say that the statute prohibits a machine which dispenses checks or tokens for replay but does not prohibit a machine which permits replays without the use of checks or tokens. If we assume that the argument is unanswerable, the absurdity lies in the statute and not in our interpretation of it. A replay machine which does not issue checks, slugs or tokens is simply casus omissus.

The rule that penal statutes are to be strictly construed has been abrogated by ORS 161.050. In lieu of that rule ORS 161.050 provides:

> "* * * Their provisions shall be construed according to the fair import of their terms with a view to effect their objects and to promote justice."

We can not give to ORS 167.535 (2)(b) the meaning sought by defendants without wrenching from the legislative language its "fair import."

It is our belief that since the plaintiff's machine issues nothing to the player which he may deposit in it, ORS 167.535 is not applicable to it. This disposes of the appellants' (defendants) assignment of error.

Notwithstanding the fact that the single assignment of error (previously quoted) is based exclusively upon ORS 167.535, the appellants make the following request in their brief:

> "If the court should determine that ORS 167.535 does not prohibit free-play pinball machines, then it should enter judgment that such machines are prohibited by ORS 167.405 or 167.505."

Even though the parties "agreed that the applicable statute to be interpreted is 167.535," as the Findings of Fact state, we will go on and determine whether or not any of the other sections of our laws which

the defendants cite, apart from ORS 167.535, outlaw the plaintiff's machines. The sections which the defendants cite are Article XV, section 4, Constitution of Oregon; ORS 161.310, 167.405 and 167.505.

Article XV, section 4 of the state's constitution, follows:

> "Lotteries, and the sale of lottery tickets, for any purpose whatever, are prohibited, and the legislative assembly shall prevent the same by penal laws."

The defendants render it clear that in their belief ORS 167.535 and none of the other enactments is applicable to pinball games. Their brief, referring to the specially concurring opinion which Mr. Justice BAILEY filed in *State v. Coats,* 158 Or 122, 74 P2d 1102, says:

> " * * * Justice Bailey's reasoning, we believe, is clear. Because it represents the view we urge here, we will have occasion to comment more fully on Justice Bailey's view later."

In his specially concurring opinion Justice BAILEY stated:

> "If we are to pursue the intention of the legislature in the instant case, we must conclude that it was intended that any one guilty of the crime with which the defendant is charged must be prosecuted under the provisions of § 14-746, supra. It surely was not the intention of the legislature that the defendant could be prosecuted under both the lottery act and the nickel-in-the-slot machine statute, or that of numerous offenders guilty of similar acts some might be prosecuted under a statute making the violation thereof a felony, while others could be charged with the violation of some other statute making the crime charged a misdemeanor.
> * * * * "

Section 14-746, Oregon Code 1930, cited in the language just quoted, as subsequently amended, is now ORS 167.535. There are two cases which are entitled *State v. Coats,* 158 Or 102, 74 P2d 1120, and *State v. Coats,* 158 Or 122, 74 P2d 1102. According to 158 Or 102, at 103, the facts in that case "are identical with those in the pinball machine case (*State v. Coats*) this day held to constitute a lottery." Those words and a re-examination of the record in our clerk's office seem to indicate that both charges were based upon a single machine possessed by Coats, but it may be that he had more than one machine and we will so assume. The patron of Coats' machine or machines, upon inserting a nickel in the device and pulling a lever, set the machine in operation. If chance favored him he could win as much as ten nickels which the machine paid out to him automatically. We see from those facts that the device which was the subject matter of the Coats decisions was a pay-off machine. It granted no replays. In the first of the two cases (158 Or 102) the information filed against the accused mentioned no section of our laws, but the opinion stated:

> "* * * we assume from the briefs that the charge was brought under section 14-746, Oregon Code 1930, prohibiting the operation of nickel-in-the-slot machines. * * *"

In the other Coats case (158 Or 122) the information, referring to the defendant, stated that he "wrongfully, unlawfully and feloniously promote[d] and set up a certain lottery for money" by operating the machine. Each information was challenged by demurrer which the circuit court sustained. In each of the two decisions the majority opinion of this court, written by Mr. Justice BELT, held that the circuit court erred when it sustained the demurrer. The

majority opinion ruled that each information charged the defendant with the operation of a lottery.

The decisions in the two cases of *State v. Coats* recognized that the term "lottery" has no technical or established legal meaning. They held that the essential elements of a lottery are prize, chance and consideration. Neither of the prevailing opinions undertook to define the word "prize." As we have said, Coats' machine issued to the winner as a prize as much as ten nickels. Section 14-801, Oregon Code, which was in effect when the Coats decisions were written, stated:

> "If any person shall promote or set up any lottery for money or other valuable thing, or shall dispose of any property of value, real or personal, by way or means of lottery * * * or suffer the setting up, management, or drawing of any such lottery, or the sale of any lottery tickets, share of a ticket, or any writing, token, or other device purporting or intended to entitle the holder or bearer thereof * * * to any prize * * * such person, upon conviction thereof shall be punished * * *."

Section 14-802, Oregon Code, stated:

> "If any person shall sell * * * a ticket or share of a ticket in any such lottery, or any writing, token, or other device as is mentioned in section 14-801, such person, upon conviction thereof, shall be punished * * *."

Section 14-803, Oregon Code, repeated much of the phraseology of which we have just taken note. Those sections, apart from minor alterations in language, are now ORS 167.405, 167.410 and 167.415.

Although the opinions written by Mr. Justice BELT in the Coats case did not define the word "prize" Mr. Justice BAILEY, in his specially concurring opinion of

which we have already taken note, set forth a number of definitions of lottery which indicated that the prize must be greater in value than the amount hazarded. The majority opinion expressed no disagreement with that view. It remained silent upon the subject. The machine in the Coats cases paid to the winner, as we have said, ten times the sum which he deposited in it when he placed it in operation. In view of that fact the majority may have felt that since the winner received something of a tangible nature and of measured worth the situation did not call for a definition of the word "prize." A free play, on the other hand, is intangible and, in a sense, of immeasurable value. The manufacturer of the plaintiff's machine assigned the arbitrary value of a nickel to the replay, but in the market place the replay has no such value. The replay can not be sold. It can not be carried away. It is intangible in nature and after the mechanics of the replay have been undergone the replay has disappeared for all time. It may appeal to the gambling instincts of some and perhaps is the kind of prize which is a "representative of value or evidence of winning" within the prohibition of ORS 167.535 (2)(b). But there is no reason to believe that *State v. Coats* contemplates "prize" as including a free game within its interpretation of the lottery statute.

The lottery statute appears to exclude free games from its coverage. We have in mind the language of the lottery statute which prohibits promoting or setting up lotteries for "money or other valuable thing" and then reiterates that same idea by prohibiting the disposal by lottery of any property of value, real or personal. It seems clear that it is tangible property which is contemplated by those provisions. They can not be construed reasonably in any other way. The words of the lottery statute of which we have just

taken notice are very different from those which we find in ORS 167.535 (2), that is "credit or other representative of value or evidence of winning." Since "lottery" has no fixed legal definition it was within the province of the legislature, acting under the constitutional mandate, to provide a reasonable definition of the "prize" element of a lottery. We believe that the prize must be tangible in nature and have a value in the market place.

The defendants' (appellants') brief says:

"No Oregon case has construed and applied ORS 167.535, which we believe to be applicable, in its present form. State v. Coats, (1938) 158 Or. 102, 74 P. (2d) 1120, and State v. Coats, (1938) 158 Or. 122, 74 P. (2d) 1102, construed this section as it read prior to its amendment by chapter 210, Oregon Laws 1937, and chapter 185, Oregon Laws 1943. Parenthetically, it should be noted that although chapter 210, Oregon Laws 1937, was enacted by the legislature prior to the time the Coats cases arose, the statute was referred to the people upon petition and therefore did not apply. * * *"

We believe that the amendments which gave ORS 167.535 its present form render it clear that that section of our laws is the enactment which determines the validity of plaintiff's machines. In our opinion the machines are not outlawed by that provision of our laws. No other enactment has any application to them.

The challenged decree is affirmed.