STATE OF OREGON,
*Respondent,*

*v.*

JOHN LANGAN,
*Appellant.*

(10-80-00383, CA 19567)

634 P2d 794

William N. Kent, Eugene, argued the cause for appellant. On the brief was Gary K. Jensen, Eugene.

Rudolph S. Westerband, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

■    Defendant appeals his convictions of promoting gambling and possession of gambling devices, ORS 167.122 and 167.147, each of which is a Class A misdemeanor. Of the four assignments of error, the first two and part of the third are answered by *State v. Wright,* 21 Or App 659, 537 P2d 130, *rev den* (1975),[1] which defendant contends should be overruled. We adhere to that decision. The remaining part of defendant's third contention — that the trial court erred in failing to give his requested instructions explaining the elements of ORS 167.147,[2] — is answered by the fact that the instruction given by the court[3] sufficiently covered the law and was "but an attenuated version of the requested charge."[4] *State v. Forsyth,* 20 Or App 624, 634,

---

[1] Defendant argues that actual knowledge of the crime must be proved under ORS 167.122 to sustain his conviction. He also contends that the machines seized by police were not gambling devices within the meaning of ORS 167.117(5). These arguments were decided adversely to defendant's position in *State v. Wright,* 21 Or App 659, 537 P2d 130, *rev den* (1975).

[2] ORS 167.147(1) provides:

"(1) A person commits the crime of possession of a gambling device if, with knowledge of the character thereof, he manufactures, sells, transports, places or possesses, or conducts or negotiates a transaction affecting or designed to affect ownership, custody or use of:

"(a) A slot machine; or

"(b) Any other gambling device, *believing that the device is to be used* in promoting unlawful gambling activity." (Emphasis supplied.)

[3] Defendant's requested instruction, in relevant part, states:

"* * * [Y]ou are instructed that it is incumbent upon the State of Oregon to prove the following material allegations beyond a reasonable doubt:

"* * * * *

"Fourth, *believing* that the device was to be used in promoting unlawful gambling activity." (Emphasis supplied.)

[4] The instruction given by the court, in relevant part, states:

"* * * In order to establish the crime of possession of gambling devices, it is necessary for the state to prove beyond a reasonable doubt each of the material elements of the crime as follows:

"* * * * *

"Third, that the defendant, with the knowledge of the character thereof, either manufactures, sells, transports, places or possesses or conducts or negotiates a transaction affecting or designed to affect ownership, custody or use of a gambling device *believing* that the device is to be used in promoting unlawful gambling activity." (Emphasis supplied.)

533 P2d 176, *rev den* (1975). We consider in detail only the fourth assignment of error: that the trial court unlawfully sentenced defendant under ORS 161.635(4). Because we agree with that contention, we affirm in part, reverse in part and remand for sentencing.

Viewed most favorably to the state, the record discloses that defendant was the owner of a tavern which contained 11 "free play" machines, including blackjack and poker video machines and pinball machines.[5] A "free play" machine is a game played by inserting a coin for one game,[6] or as many as eight coins for eight games, and then trying to "beat" the machine, which entitles the winner to one or more free games. On 10 of the 11 machines in defendant's tavern, however, a winner could be paid in cash for the accumulated free games instead of playing out the games on the machine.[7]

During the months of August and September, 1979, undercover police officers visited the defendant's tavern and played the machines regularly. On August 28, 1979, one of the officers was paid $12.50 in cash by defendant's employee for winning "in excess of" 50 free games on the blackjack machines. On September 5, 1979, the defendant paid cash to the same officer for winning 140 free games and paid cash to another officer for winning 50 free games. After each winning, the officer observed the defendant or one of his employees jotting down the "pay-off" transaction in a spiral notebook. Subsequently, the 11 machines were seized from the tavern under a valid search warrant, and the defendant was indicted.

---

[5] Defendant owned five of the eleven machines seized by the police from his tavern. Of the remaining six machines, five were owned by Steven Kraus, with whom the defendant evenly split the net profits received from them. The remaining machine, referred to as an "Old Chicago machine," was owned by an individual not involved in these proceedings, and "payoffs" were not made on this machine.

[6] All of the machines were coin-operated. Some of them, such as the poker and blackjack video machines, accepted only quarters. The pinball machines operated only on nickels.

[7] Although the machines would credit a maximum deposit of only eight coins at one time, the player could accumulate free games and bet this greater amount as he played. Thus, for example, a player could gamble as much as 180 quarters from accumulated "credits." The greater the number of quarters or "credits" bet, the greater the odds against the player beating the machine.

Defendant's contention that the sentence imposed by the trial court under ORS 161.635(4) was unlawful presents two questions: (1) whether defendant may be fined based upon gains derived from activity similar to that constituting the offenses of which he was convicted, other than on the date or dates charged in the indictment,[8] and (2) what "gain" means as defined in ORS 161.625(4)?

Following defendant's conviction of both offenses, the trial court held a special hearing preliminary to sentencing defendant under ORS 161.635(4), which allows a court to fine a defendant up to twice the amount of moneys wrongfully "gained" from the commission of the offense in lieu of the maximum fine of $1,000 provided in ORS 161.635(1)(a)[9] for Class A misdemeanors. *See* Oregon Criminal Code, Commentary § 78, at 72.

---

[8] The indictment against defendant read as follows:

"The above named defendant is accused by the Lane County Grand Jury of the crime of PROMOTING GAMBLING IN THE SECOND DEGREE POSSESSION OF GAMBLING DEVICES committed as follows:

#### "COUNT I

"The defendant on or about the 5th day of September, 1979, in the county aforesaid, did unlawfully and knowingly promote and profit from unlawful gambling in the Eldorado Club at 3000 West 11th Avenue, Eugene, Oregon; contrary to statute and against the peace and dignity of the State of Oregon;

#### "COUNT II

"and as part of the same act and transaction as set forth in Count I herein, the defendant on or about September 5, 1979, in the county aforesaid, did unlawfully and with knowledge of the character thereof, place and possess gambling devices including five poker machines, one blackjack machine, a "Miss America" pinball machine, a "Key West" pinball machine, a "Showtime" pinball machine in the Eldorado Club, believing that the devices were to be used in promoting unlawful gambling activity; contrary to statute and against the peace and dignity of the State of Oregon."

[9] ORS 161.635(1)(a) and (4) provide:

"(1) A sentence to pay a fine for a misdemeanor shall be a sentence to pay an amount, fixed by the court, not exceeding:

"(a) $1,000 for a Class A misdemeanor."

"* * * * *

"(4) If a person has gained money or property through the commission of a misdemeanor or violation, then upon conviction thereof the court, instead of imposing the fine authorized for the offense under subsection (1), (2) or (3) of this section, may sentence the defendant to pay an amount fixed by the court, not exceeding double the amount of the defendant's *gain from the commission of the offense*. In that event, subsections (4) and (5) of ORS 161.625 apply." (Emphasis supplied.)

■      At that hearing, the trial court admitted evidence of moneys received and expenses paid by defendant for the year 1979. From that evidence, the court determined that defendant's gain exceeded $5,000 and doubled that amount in assessing defendant a fine of $10,000. The state contends the trial court's assessment was proper, because the legislature intended, by permitting the alternative fine, to insure that a defendant not profit from his unlawful conduct and to deter the repetition of the same offense by making it economically unrewarding. Even accepting the state's contention, it does not follow that defendant may be fined for offenses with which he was not charged.

The indictment against defendant charged him with two gambling offenses, both of which were alleged to have occurred "on or about the 5th day of September, 1979." He was found guilty only of these two offenses. Thus, at sentencing, the trial court had the option of fining defendant under ORS 161.635(1)(a) or (4). Under subsection(1)(a), defendant could have been fined up to $1,000 for each offense,[10] a total of $2,000. If the state is correct that the trial court could treat the offense as a continuing one for which a fine may be assessed for each violation in the continuum, defendant could be fined $2,000 per day during the period in which the continuing offense was committed. Similarly, under ORS 161.615(1) defendant could be sentenced to imprisonment for one year for each offense — presumably two years here.

We do not believe it can be contended seriously that defendant could have been sentenced to imprisonment, or to a traditional fine, based upon the offenses of which he was convicted, and then the term and fine be multiplied by the number of days during which similar, uncharged, offenses were committed within the statute of limitations. If that could have been done, the state could have saved itself and the trial court a lot of trouble and expense in attempting to establish defendant's illegal gain and, at the same time, have arrived at a substantially greater fine.

---

[10] There is no issue presented as to whether the two offenses merged, and we do not consider that question.

■ However, to allow such a sentencing scheme would not only violate the apparent intention[11] of the legislature embodied in the sentencing statutes, but would offend the most basic notions of due process which demand, at the very least, that a person receive fair notice of all the offenses with which he is charged. It seems far more probable that the legislature intended that the alternative fine be available to the sentencing court in circumstances where the traditional liquidated fine is inadequate to penalize the defendant for the offense of which he has been convicted.

The state analogizes ORS 161.635(4) to the statutory provisions permitting the sentencing court to impose restitution as a part of the sentence. ORS 137.106. However, restitution may be imposed only for "criminal activities," defined as "* * * any offense with respect to which the defendant is convicted or any other criminal conduct admitted by the defendant." ORS 137.103(1). Here, defendant has neither been convicted of offenses other than those charged to have been committed on or about September 5, 1979, nor has he admitted other criminal conduct.[12] *See State v. Cox,* 35 Or App 169, 581 P2d 104 (1978); *State v. Armstrong,* 44 Or App 219, 605 P2d 736, *rev den* 289 Or 45 (1980); *State v. Boswell,* 52 Or App 535, 628 P2d 763, *rev den* 291 Or 419 (1981).

Accordingly, we hold that defendant may not be sentenced, whether by fine or imprisonment, for offenses

---

[11] The legislative history surrounding the passage of ORS 161.635(4) is sparse; thus legislative intent must be gleaned from either the plain meaning of the statutory language or, by analogy, reference to similar statutes. ORS 161.635(4) was enacted in 1971 (Or Laws 1971, ch 743, § 77); it was derived from the proposed Michigan Revised Criminal Code §§ 1501, 1505 *(see* Oregon Criminal Code of 1971, Commentary § 78, p 72), which, in turn, was derived from New York Revised Penal Law § 80.05. The New York statute has been construed in *People v. Hausman,* 82 Misc 2d 1032, 372 NYS2d 503 (1975), which held that a defendant sentenced under § 80.05 could be fined "only in accordance with the gain realized on the specific date charged." 372 NYS2d at 509-10; *see also, People v. Mature Enterprises, Inc.,* 73 Misc 2d 773, 343 NYS2d 934 (1973). Although we are not bound by decisions interpreting a borrowed statute subsequent to our adoption of the statute, *State v. Clark,* 39 Or App 63, 591 P2d 752, *rev den* 286 Or 303 (1979), such decisions may be persuasive.

[12] In any event, the analogy between determining the amount of restitution to be made by a defendant and the amount of fine to be imposed against him is not complete. The primary purpose of restitution is to make the victim whole, whereas the purpose of a fine is to penalize.

other than those of which he was convicted, which were committed on or about September 5, 1979. The question remains as to how defendant's gain is determined under ORS 161.635(4) for the purpose of assessing a fine for those offenses.

■ The state apparently contends that gain is determined by taking the gross receipts from the gambling devices and subtracting the amount of money paid to winners. Defendant, on the other hand, contends that he is entitled to deduct from gross receipts a pro rata portion of all business expenses he incurred in operating his tavern — including rent, utilities, taxes, depreciation and the like. We conclude that both parties are wrong.

The provisions of ORS 161.635(4) refer us to ORS 161.625(4), which defines "gain":

"(4) As used in this section, 'gain' means the amount of money or the value of property derived from the commission of the felony, less the amount of money or the value of property returned to the victim of the crime or seized by or surrendered to lawful authority before the time sentence is imposed. 'Value' shall be determined by the standards established in ORS 164.115."

The statute does not define gain as net profits, but rather as "the amount of money * * * derived from the commission of the [crime]." With respect to the promotion of gambling, we take that phrase to mean the gross receipts derived from the slot machines used illegally. The statute then allows only two deductions from that amount: (1) the amount of money or the value of property returned to the victim, and (2) the amount of money or the value of property seized by lawful authority.

Taking the second deduction first, the record discloses that police seized five machines owned by defendant during the execution of the search warrant. At the sentencing hearing, defendant testified that those machines had a replacement value of $17,000. Under ORS 164.115,[13] however, replacement value may be used only if the fair market value of the property at the time and place of the crime

---

[13] ORS 164.115(1) provides:

"For the purposes of chapter 743, Oregon Laws 1971, the value of property shall be ascertained as follows:

cannot be ascertained. There is no evidence for that predicate. Further, we do not know which, if any, of those machines were returned to defendant and which were or would be forfeited to the state.[14] ORS 167.162. The police seized $394.50 in cash at the time the search warrant was executed; again, however, it is unclear whether that money will be returned to defendant.

A more problematical question is presented with respect to the first deduction: whether money paid by defendant to "winners" on his machines falls within the phrase "money * * * returned to the victim" and thus is subject to being offset under ORS 161.625(4). Ordinarily, a winner would not be considered a victim, although he could be if he pays in more than he wins. Because gambling involves a person's *risking* "* * * something of value upon the outcome of or contest of chance * * *," ORS 167.117(4), and the one taking the risk is characterized as a "player," ORS 167.117(8), rather than a victim, we conclude that the statute does not contemplate that payoffs or winnings be treated as money returned to the victim.

Because the trial court improperly applied ORS 161.635(4), the case must be remanded for resentencing. Given our interpretation of that statute, the trial court may wish to proceed under subsection (1) of ORS 161.635 rather than under subsection (4).

Affirmed in part; reversed in part, and remanded for sentencing.

---

"(1) Except as otherwise specified in this section, value means the market value of the property at the time and place of the crime, or if such cannot reasonably be ascertained, the cost of replacement of the property within a reasonable time after the crime."

[14] From the record, it appears that a forfeiture hearing under ORS 167.162 concerning the machines had not been held. The outcome of such a hearing would be relevant to the proper. amount of property to be deducted from defendant's gain.