Argued and submitted April 6, count I affirmed, count II reversed, remanded for further proceedings October 26, petition for rehearing denied November 23, 1982

## STATE OF OREGON,
*Respondent on review,*

*v.*

## JOHN LANGAN,
*Petitioner on review.*

(SC 28236, CA 19567, TC 10-80-00383)

652 P2d 800

Gary K. Jensen, Eugene, argued the cause and filed brief for petitioner on review.

James E. Mountain, Jr., Salem, argued the cause for respondent on review. On the brief were Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General and Rudolph S. Westerband, Assistant Attorney General, Salem.

LENT, C. J.

Linde, J., dissented and filed opinion in which Campbell, J., joined.

Peterson, J., dissented and filed opinion.

## LENT, C. J.

Defendant was convicted of two misdemeanors: Count I, promoting gambling, and Count II, possession of a gambling device, because he gave patrons cash in lieu of "free play" won on electric game machines installed in his tavern. His main contentions on appeal were that the machines were not "gambling devices" within the meaning of the governing statutes and that the court misconstrued the element of knowledge required for guilt of promoting gambling. The Court of Appeals rejected these contentions, relying on its prior decision in *State v. Wright,* 21 Or App 659, 537 P2d 130 (1975), but remanded the case for resentencing on other grounds not in issue here. We allowed review to determine the elements of these offenses.

■      The question is not whether persons who put coins into the "free play" machines were gambling as that term is commonly used or would be used by this court. The question is what the legislature chose to include or to exclude in defining the crimes with which defendant was charged. We hold that the legislature meant to exclude "free play" machines from the definition of "gambling device," and that it made a person guilty of knowingly promoting unlawful gambling if he knows the facts that make the gambling which he promotes unlawful.

### I. *Gambling device.*

Under ORS 167.147, the basis of one of the two offenses of which defendant was convicted, one commits a crime if, with the requisite knowledge and belief, one possesses or enters into various transactions concerning a "slot machine" or "any other gambling device."[1] As defendant was not charged with possession of a slot machine, the charge depends on the definition of a "gambling device." This is found in ORS 167.117(5):

---

[1] ORS 167.147(1):

"(1) A person commits the crime of possession of a gambling device if, with knowledge of the character thereof, he manufactures, sells, transports, places or possesses, or conducts or negotiates a transaction affecting or designed to affect ownership, custody or use of;

"(a) A slot machine; or

"(b) Any other gambling device, believing that the device is to be used in promoting unlawful gambling activity. . . ."

> " 'Gambling device' means any device, machine, paraphernalia or equipment that is used or usable in the playing phases of unlawful gambling, whether it consists of gambling between persons or gambling by a person involving the playing of a machine. Lottery tickets, policy slips and other items used in the playing phases of lottery and policy schemes are not gambling devices within this definition. Amusement devices which do not return to the operator or player thereof anything but free additional games or plays shall not be considered to be gambling devices."

Defendant relies on the final sentence to show that the machines in his tavern were excluded from the definition of "gambling device," because the machines themselves returned nothing but free additional games or plays to the players. Therefore, he argues he could not be guilty of possession of a "gambling device" under ORS 167.147.

A majority of the Court of Appeals reached a different interpretation in *State v. Wright, supra,* which that court reaffirmed in the present case. It read the definition of "gambling device," above, to mean that "free-play amusement devices are not *per se* gambling devices," but that the statute nevertheless covers "those machines which are *mechanically* free-play 'amusement devices' but *used* as gambling devices." 21 Or App at 667. Chief Judge Schwab dissented on the ground that this interpretation read the last sentence of the definition out of the statute. 21 Or App at 669.

There is no question that a mechanical amusement device, like cards or dice, could fall within the definition of "gambling device" in the first sentence of ORS 167.117(5) whenever it is used or usable in the "playing phases of unlawful gambling." The majority in *Wright* read the exclusion in the last sentence as if it said that "amusement devices shall not be considered to be gambling devices merely by virtue of the fact that they return free additional games or plays." But that is not what the text says. Literally, it states that amusement devices which "return" no more than additional free games or plays "shall not be considered to be" within subsection (5)'s definition of a "gambling device," regardless whether they are "used or

usable" as such.[2] The *Wright* court believed, however, that its reading was compelled by the legislative history. We do not reach the same conclusion.

The legislative history is reviewed in the majority and dissenting opinions in *Wright* and need only be summarized here. The Criminal Law Revision Commission in 1970 proposed to include free-play machines in the prohibition of gambling. When the proposed Criminal Code came before the 1971 Legislative Assembly, lobbyists for the amusement industry and localities which taxed pinball machines first persuaded the senate committee to eliminate a provision that would bring free games within the term "something of value" in defining "gambling." Once this provision had been rejected, the free-play feature no longer would suffice to make an amusement device a "gambling device." There was no need thereafter to add the final sentence to the definition of "gambling device" in order to avoid including free-play machines "per se," as the *Wright* majority thought, unless the proponents of the amendment sought mere redundancy from an excess of caution.[3]

There is no reason to believe that this is all the proponents sought. If a machine is a "gambling device" it is subject to summary seizure and eventual forfeiture. ORS 167.162. It seems more probable that the sellers, lessors, or owners of free-play machines wished to exempt the machines entirely from this risk than that the fate of the machine would depend on whether it was "usable" or even used as a gambling device by others. The *Wright* court's construction of the statute may allow more effective control

[2] In another respect, the words "do not return * * * anything but free additional games or plays" are ambiguous: Do they exclude "amusement devices" which return nothing at all but are used or usable for gambling? The ambiguity need not be resolved in the present case.

[3] The majority in *State v. Wright*, 21 Or App 659, 537 P2d 130 (1975), thought that the "purpose of the exclusion was to re-enforce, in affirmative form, a previous amendment adopted by the Committee March 30, 1971 [that] removed free-game machines from the definition of 'something of value.'" The majority, however, interpreted the second amendment to leave free-play machines within the definition of "gambling device" only when the machines were in fact "used" as such, although the definition says "used or usable." 21 Or App at 666-67. If such machines remained gambling devices as long as they were "usable" for gambling, the effect of their express exclusion in the last sentence would shrink to the vanishing point. But an interpretation that includes machines "used" but not those "usable" for gambling has no warrant in ORS 167.117(5).

of gambling devices than a law that differentiates whether a machine itself pays the successful player or a bartender does so. It may or may not represent a better policy. That is a matter for the legislature, not for the court. To the owners of free-play machines, the difference would be important, and we think that the legislature acceded to their wish when it adopted the final sentence of ORS 167.117(5).[4]

Because the state excludes "free-play" machines from the definition of "gambling device," defendant's conviction for possession of gambling devices must be reversed.

## II. *Promoting gambling.*

The other offense of which defendant was convicted is defined as follows in ORS 167.122:

"(1) A person commits the crime of promoting gambling in the second degree if he knowingly promotes or profits from unlawful gambling."

By moving for acquittal, by excepting to instructions given and to failure to give a requested instruction, defendant asserted that in order to convict him of promoting or profiting from unlawful gambling, the state must show that he knew whatever gambling occurred to be unlawful. This contention, too, was rejected by the Court of Appeals in *State v. Wright, supra,* and not reexamined in this case.

The state relies on ORS 161.115(4), on the strength of which the *Wright* opinion summarily rejected a defense based on the statutory requirement of a culpable mental state.[5] The court wrote:

---

[4] In dissent, Justice Peterson draws essentially the same conclusion from the legislative history as did the majority of the Court of Appeals in *State v. Wright, supra.* The dissent, 293 Or at 669, 652 P2d at 809, concludes that the legislature intended that one who makes payoffs for the free games accumulated by a player of an amusement device would be guilty of the crime of possession of a gambling device. We believe otherwise, of course, but we do not believe that one making such payoffs is beyond the reach of the criminal law. If all elements are established, the one making such payoffs may be found guilty of promoting unlawful gambling.

[5] ORS 161.095(2) provides:

"(2) Except as provided in ORS 161.105, a person is not guilty of an offense unless he acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

"On the other hand, ORS 161.115(4) is dispositive of defendant's contention. It provides:

" 'Knowledge that conduct constitutes an offense, or knowledge of the existence, meaning or application of the statute defining an offense, is not an element of an offense unless the statute clearly so provides.'

"Accordingly, it was not necessary that defendant have actual knowledge that what he did was illegal to sustain the conviction."

21 Or App at 663. No doubt it was not necessary that defendant knew that his own conduct was illegal. It does not follow that he need not know that unlawful gambling was going on.

ORS 167.122 might have been written so as to make one guilty of a crime "if he knowingly promotes or profits from gambling." It was not so written. The statute forbids only the promotion of unlawful gambling; the statute does not address whether one may promote and profit from gambling that is not unlawful. The unlawfulness of the gambling is an essential element in the guilt of the promoter.

We see no reason why this statute should be read to impose strict liability on anyone who "materially aids any form of gambling," ORS 167.117(10), including one who has no financial interest in or profit from the activity, if without his knowledge the gambling takes an unlawful form. That might reach persons who conduct bridge tournaments or make available the paraphernalia for other games played with cards or dice if the players choose to stake something of value on the outcome of their games. ORS 167.117(3) and (4). The state's view would impose that liability. But certainly ORS 167.122 does not say in so many words that knowledge of a key element, the unlawfulness of the gambling, is immaterial. The statute on which the state relies, ORS 161.115, provides to the contrary in its first subsection:

"(1) If a statute defining an offense prescribes a culpable mental state but does not specify the element to which it applies, the prescribed culpable mental state applies to each material element of the offense that necessarily requires a culpable mental state."

This carries out the policy of the criminal code to "limit the condemnation of conduct as criminal when it is without fault." ORS 161.025(1)(d).

■ We conclude that ORS 167.122 requires more than knowledge that one is promoting gambling even when, unknown to the promoter, the gambling satisfies the conditions that make it "unlawful gambling." The state and the Court of Appeals are right that guilt does not depend on defendant's knowledge of the law. ORS 161.115(4). It does, however, require knowledge of those facts and conditions that, under the law, make the gambling unlawful, rather than merely knowledge of the gambling itself.

■ ■ As noted, *supra,* defendant moved for judgment of acquittal on the ground that there was not "sufficient proof of the knowledge of the illegality of the act" for conviction. In his motion, he urged that there has to be proof of the illegality of the unlawful gambling. Denial of that motion was not error, for there was ample evidence from which a jury could find that defendant knew that he and his employees were unlawfully paying patrons who won free plays on the machines.

That there was evidence to take the case to the jury does not dispose of the issues as to the correctness of the court's charge to the jury. It was up to the jury to decide what the evidence proved beyond a reasonable doubt and to do so under proper instructions as to the law.

From the outset of the trial, the defendant consistently informed the court that his theory was that he could not be guilty of this crime unless it be proven that he knew his conduct was illegal. Just before the presentation of evidence was to commence, a colloquy occurred as to the admissibility of certain evidence, and defendant there advanced that theory:

"THE COURT: Well, part of your theory of the case is if he didn't know the conduct that he engaged in was unlawful, he's not guilty?

"MR. JENSEN: That is only to Count I."

At the close of the state's case, defendant, in arguing his motion for judgment of acquittal, returned to that same theme:

"MR. JENSEN: May it please the Court and counsel.

"At this time the defendant would move the Court for a Motion for a Judgment of Acquittal on the following grounds:

"First, as to Count I, Your Honor, Count I, the charge of Promoting Gambling in the Second Degree. It has been the defendant's position in his Trial Memorandum as well as the case of *State vs. Wright,* that there has to be proof of knowledge of the illegality of the act. That is, the illegality of the unlawful gambling.

"THE COURT: Do you mean the dissenting opinion?

"MR. JENSEN: Yes.

"When I say *State vs. Wright,* I may jump to the conclusion. I'm arguing from the dissent.

"* * * * *

"In the first Count and majority opinion, I think the dissent agrees that knowledge of the illegality of the gambling that is being promoted is not part of the offense, but I'm arguing and urging the Court that the Court should reverse that position and accept that as the doctrine.

"On the first ground, it would be there is not sufficient proof of the knowledge of the illegality of the act to convict the defendant in this case."

We believe it to be fair that the defendant throughout was arguing that he could not be convicted unless he were shown to know the law as well as the facts. We have rejected that theory as set forth earlier in this opinion, but defendant's theory must be kept in mind in considering his claim of error with respect to the charge to the jury.

The trial court instructed the jury on this issue as follows:

"Turning to the first Count in the Indictment, a person commits the crime of Promoting Gambling in the Second Degree, if he knowingly promotes or profits from unlawful gambling.

"In order to establish the crime of Promoting Gambling in the Second Degree, it is necessary for the State to prove beyond a reasonable doubt each of the following elements:

"* * * * *

"Next, that the defendant either promoted or profited from unlawful gambling.

"* * * * *

"If you find the State has proven that the defendant promoted illegal gambling or profited from illegal gambling, either one would be sufficient.

"* * * * *

"I instruct you that it is not necessary for the State to prove that the defendant knew that the gambling he promoted was illegal if you find he promoted gambling. Knowledge or appreciation that the conduct in question was illegal is not an element of the offense of promoting unlawful gambling."[6]

Defendant took the following exception:

"The last and final exception we'd have would be the Court's giving the instruction, I don't believe the State requested it, and I ask for just the one that knowledge on the part of the defendant in the promotion charge is not an element of the offense, and we feel that it is. I think the Court gave that specific instruction.

"THE COURT: Was it State's 8?

"MR. JENSEN: Oh, it is. It is State's exhibit (sic) 8, Your Honor.[7]

"We except to that based on our position that the knowledge is a material element of the offense, so that's all our exceptions."

Other than the matter discussed in footnote 6, *supra,* the trial court correctly told the jury that the state did not have to prove that the defendant knew or appreciated that his conduct was illegal. The defendant's exception did no more than to refer to his iterative contention that the state did have to prove that knowledge or appreciation. There was no error in this respect.

---

[6] It is immediately apparent that the court made a misstatement in the last paragraph in omitting the adjective "unlawful" or "illegal" preceding the final word of the first sentence of the paragraph. The defendant did not except to that misstatement, however, and we do not choose to address it on our own motion in light of the fact that the trial court at least four times, including the very next sentence, had told the jury that the gambling must be unlawful for conviction.

[7] Actually, the trial court did not give State's #8 as requested. The trial court added the words, "if you find he promoted gambling." That is the clause which we discussed in footnote 6, *supra.*

Finally, the defendant has assigned as error the trial court's failure to give a requested instruction:

"You are instructed that the State of Oregon must prove beyond a reasonable doubt the Defendant had knowledge that his conduct constituted the offense of promoting gambling and was an illegal act."

Defendant, in his brief, has summarized his position with respect to the failure to give the instruction as follows:

"In other words, it is Defendant's position in this case that the State must prove that the Defendant had actual knowledge that which he did was illegal to sustain a conviction."

This is the same point which defendant has raised with respect to his motion for judgment of acquittal and the exception to the charge given to the jury. We have held to the contrary. Defendant must be shown to have knowledge of the facts which make the conduct illegal; it need not be shown that he knows or appreciates the law.[8]

In dissent from our conclusion concerning the adequacy of the defendant's exception to a portion of the trial court's charge to the jury, Justice Linde correctly asserts the proposition that the exception is capable of a construction that defendant objected to the instruction on the ground that it did not tell the jury that defendant must be shown to have knowledge that gambling either by himself or by others was of a character that made it illegal. That is certainly not the issue defendant intended to raise by his exception. In his brief in the Court of Appeals, he summarized his objection to the instruction given, as well as his exception for failure to give his requested instruction, as quoted above; in other words, he meant to convey to the trial judge his repeated contention that he must realize or appreciate the legal conclusion that the gambling was illegal.

---

[8] The indictment charged that the defendant did "knowingly promote and profit from unlawful gambling." The trial court instructed the jury:

"I have used the word 'knowingly', in these instructions, and I instruct you that 'knowingly' or 'with knowledge', when used with respect to conduct or to a circumstance described by a statute defining an offense, means that a person acts with an awareness that his conduct is of a nature so described or that a circumstance so described exists."

See ORS 161.085(8).

The purpose of exceptions to the charge is to give the trial judge the chance to correct error before the cause is submitted and decided. The dissent would turn the matter into an intellectual game in which the trial judge would have to detect a hidden contention from the language of the exception where the defendant never intended to convey that contention and, in fact, did not even advance it later on appeal. We believe this asks too much of the trial judge. The trial judge, in these circumstances, justifiably must have thought that the defendant was protecting his record for appeal on the same legal issue which defendant had joined throughout the cause. We can find no reversible error in these circumstances.

Defendant's conviction on Count I is affirmed. Defendant's conviction on Count II is reversed. The case is remanded for further proceedings with respect to sentencing in accord herewith and in accord with the Court of Appeals remand.

**LINDE, J.,** dissenting.

I join in the Court's statement of the law applicable to this case. I disagree only with the conclusion that defendant did not adequately bring to the trial court's attention that the instruction on the knowledge required for guilt of the first count, promoting gambling, was erroneous.

The trial court told the jury:

> "I instruct you that it is not necessary for the State to prove that the defendant knew that the gambling he promoted was illegal if you find he promoted gambling. Knowledge or appreciation that the conduct in question was illegal is not an element of the offense of promoting unlawful gambling."

After the jury retired, the defense counsel stated his exceptions. With respect to the quoted instruction, he said:

> "The last and final exception we'd have would be the Court's giving the instruction, I don't believe the State requested it, and I asked for just the one that knowledge on the part of the defendant in the promotion charge is not an element of the offense, and we feel that it is. I think the Court gave that specific instruction.

THE COURT: "Was it State's 8?

MR. JENSEN: "Oh, it is. It is State's exhibit (sic) 8, Your Honor.

"We except to that based on our position that the knowledge is a material element of the offense, so that's all of our exceptions."[1]

The instruction was erroneous insofar as it uses the words "was illegal" without discriminating between knowledge of the facts that make the gambling illegal and knowledge of the law. As given, the instruction says that a defendant need not know that gambling by others in fact is of a character that brings it within the prohibition. That is wrong.

It is true that defendant argued for more than this, as the Court notes. He sought an instruction that a defendant's knowledge of the law is an element of the offense, not only his knowledge of the facts that make the gambling in question unlawful. He was not entitled to that instruction. But the fact that defendant asked too much does not mean that his exception did not raise the error in the faulty instruction that was given. He excepted to "the Court's giving the instruction. . . that knowledge on the part of the defendant in the promotion charge is not an element of the offense, and we feel that it is." The instruction indeed was faulty in this respect.

When the correctness of an instruction under which a jury is told to convict or acquit an accused is called into issue, both trial and reviewing courts should focus on the merits of the instruction, not on the quality of lawyers' arguments. If the instruction cannot withstand scrutiny, no useful purpose is served by shifting an issue of proper instructions to a potential later argument over the adequacy of the defense. The exception drew the court's attention to defendant's claim that the state's requested instruction, based on *State v. Wright, supra* n. 1, was improper. It was

---

[1] The State's requested instruction no. 8 was:

"I instruct you that it is not necessary for the State to prove that the defendant knew that the gambling he promoted was illegal. Knowledge or an appreciation that the conduct in question was illegal is not an element of the offense of Promoting Unlawful Gambling,"

for which the prosecution cited *State v. Wright,* 21 Or App 659 (1975), ORS 161.115(4).

improper. For this reason, I dissent from the affirmance of the conviction on Count I.

Campbell, J. joins in this dissenting opinion.

**PETERSON, J.,** dissenting.

I dissent. An amusement machine which, though designed to pay off in free games, is used by its possessor to pay cash to the player for games won is a "gambling device," as defined in ORS 167.117(5).

The term "gambling device" is defined as "* * * any * * * machine that is used or usable in the playing phases of unlawful gambling, whether it consists of gambling between persons or gambling by a person involving the playing of a machine. * * *. Amusement devices which do not return to the operator or player thereof anything but free additional games or plays shall not be considered to be gambling devices." I read the statute to mean that an amusement device that returns to the operator or player something other than free additional games is a gambling device. The mere fact that the machine does not itself cough up nickles, dimes, quarters or dollars to a winning player does not mean that the machine is not a gambling device. If the machine's possessor coughs up the money to the winner, the machine is a gambling device for the same reasons that cards, dice or some slot machines which, although they do not themselves discharge winnings in cash, are gambling devices. Here, there is ample evidence that the device, with the assistance of the defendant, returned something more than free additional games.

If there is any doubt, it is erased by examining the legislative history. In 1959, this court held that, under the then existing gambling law, free play pinball machines were not gambling devices. *McKee v. Foster,* 219 Or 322, 347 P2d 585 (1959). In 1970, the Criminal Law Revision Commission proposed the enactment of a Criminal Code, provisions of which would overrule *McKee v. Foster, supra.* Section 263 of the proposed Criminal Code defined the term "something of value" as follows:

" 'Something of value' means any money or property, any token, object or article exchangeable for money or property, or any form of credit or promise directly or

indirectly contemplating transfer of money or property or of any interest therein, or involving extension of a service, entertainment or a privilege of playing at a game or scheme without charge."

"Gambling device" was defined as follows:

" 'Gambling device' means any device, machine, paraphernalia or equipment that is used or usable in the playing phases of gambling, whether it consists of gambling between persons or gambling by a person involving the playing of a machine. Lottery tickets, policy slips and other items used in the playing phases of lottery and policy schemes are not gambling devices within this definition."

Donald Paillette, Project Director of the Commission, at a meeting of Subcommittee No. 2 on February 9, 1970, advised the subcommittee that the definition of "something of value" was intended to overrule *McKee v. Foster*. Minutes of a meeting of the Commission on April 3, 1970, contain this statement:

"Mr. Paillette advised that *McKee v. Foster,* 219 Or 322, 347 P2d 585 (1959), held that free play pinball machines were not prohibited. The intent of the draft, however, was to prohibit free play pinball machines and other free play devices. A pinball machine not having a free play mechanism would not be illegal. If a pinball machine, for example, required the player to insert a nickel in order to play it and all he received was the fun and amusement of playing the machine, it would not be prohibited by the draft provisions. If, however, he received a free game by compiling a high score, the device would be illegal." Minutes, Criminal Law Revision Commission, April 3, 1970, at 27-28.

When the matter came before the Senate Criminal Law & Procedure Committee on March 30, 1971, it was apparent that the amusement machine industry was concerned that all free play pinball machines would be forbidden, and amendments were proposed which were thought to obviate the problem and allow free play pinball machines to exist if no cash payoffs were made. The amendment was to delete that portion of the definition of "something of value" following the word "therein." Senator Fadeley was unsure whether this single amendment would achieve the desired result—to permit free play pinball machines if no cash payoffs were received—and suggested adding to the

bill a clause which is now the last sentence of the definition of "gambling device," ORS 167.117(5). Richard Barton, Multnomah County Deputy District Attorney, expressed the opinion that no change was necessary, that with the changed definition of "something of value," free play machines would lawfully exist. Minutes, Senate Criminal Laws & Procedure Committee, March 30, 1971, at 1-2.

Apparently Senator Fadeley and others were unconvinced, for three days later, on April 2, 1971, he proposed an amendment to the definition of "gambling device" to add what is now the last sentence of ORS 167.117(5), to make it clear "that the *operation* of 'free play' games or plays is not considered to be a gambling offense" (emphasis added). Senator Yturri stated that he thought that the amendments to the "something of value" definition adopted three days earlier had "taken care of" the problem. There being some doubt whether the previous amendments to the "something of value" definition accomplished the desired goal, it was unanimously agreed to make the changes proposed by Senator Fadeley. Minutes, Senate Criminal Law and Procedure Committee, April 2, 1971, at 2-3. In order to make it permissible to *operate* free play machines for amusement, amendments were made to both the definition of "gambling device" and the definition of "something of value."

No one expressed any disagreement with one of the overall goals of the legislation—to make unlawful the operation of pinball machine payoffs, and no one suggested that this goal could still not be achieved under the statute as amended. The majority's construction of the last clause of ORS 167.117(5) is over literal and is contradicted by the legislative history. Contrary to the conclusion of the majority that the amendment to the definition of "gambling device" was intended to exclude all free play machines from the definition of "gambling device," the perceived need to make the amendment was because of uncertainty whether the amendment to "something of value" would achieve the desired goal—to permit free play pinball machines to be lawfully operated if there were no payoffs—but to nonetheless permit the prosecution of persons who operated machines which returned to the player anything other than "free additional games or plays."