Argued and submitted December 7, 1990, reversed February 6, 1991

STATE OF OREGON,
*Respondent,*

*v.*

ROCKY FERRACINI,
*Appellant.*

(8903 0495m; CA A64113)

805 P2d 149

Steven C. Watson, Albany, argued the cause for appellant. With him on the brief was Roger H. Reid, Albany.

John A. Reuling, Jr., argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

Defendant appeals his conviction for promoting gambling in the second degree. ORS 167.122.[1] We reverse.

From January 4 to 10, 1989, Winden, a private detective working with the Albany Police Department, repeatedly went to the Fog Horn Tavern in Albany to investigate suspected illegal gambling activities. Defendant is a bartender at the tavern. On January 9, Winden played a Draw 80 Poker Machine at the tavern and won 40 free games. Defendant gave him a credit coupon for the free games. The next day, Winden asked defendant if he would give him money for the coupon. Defendant refused, saying that he could not pay off on the machines, because that would be illegal. Defendant continued to refuse Winden's repeated requests for money for the free games. Fryman, a patron of the tavern, overheard Winden say that he was unemployed and needed money. He also heard defendant refuse to pay Winden for the free games. Sometime later, defendant introduced Fryman to Winden. Fryman offered to buy Winden's coupon for $10, which was the cost to play 40 games on the machine. Winden accepted Fryman's offer and gave him the coupon in exchange for $10. Defendant was aware of the exchange between Winden and Fryman.

Defendant was cited for promoting gambling in the second degree and, after waiving a jury, was found guilty. The trial court found these facts: (1) Defendant did not pay money to Winden directly; (2) he did not arrange for Fryman to pay; (3) he did not materially aid Fryman; (4) he did have control of the premises; and (5) he did permit an exchange of money for the coupon.

Defendant assigns error to the denials of his motions for judgment of acquittal after the state rested and at the end of the trial. He argues that there was no evidence that the exchange between Winden and Fryman was gambling or, in any event, that it was unlawful gambling. He asserts that the exchange does not fall under the definition of "gambling" in

---

[1] ORS 167.122 reads in part:

"(1) A person commits the crime of promoting gambling in the second degree if the person knowingly promotes or profits from unlawful gambling."

ORS 167.117(4).[2] He claims that, because Winden had already won 40 free games on the machine when Fryman offered to buy them, Winden neither staked anything of value nor risked anything when he accepted the offer.

Defendant also argues that there was no evidence that his action or inaction *promoted* gambling. ORS 167.117(10).[3] He contends that, even if the exchange of money for the coupon was gambling, there was no evidence that he knew that it was unlawful. He relies on *State v. Langan,* 293 Or 654, 660, 652 P2d 800 (1982), which held that a person is not liable as a promoter under ORS 167.122 if he does not know any facts or conditions that make the gambling unlawful.

The state contends that Winden's conduct was gambling if he relied "upon an agreement or understanding that [he would] receive something of value in the event of a certain outcome." ORS 167.117(4). It concedes that Winden had no agreement with defendant for payment before he invested his quarters in the game, but it contends that there was evidence that Winden played the game with the *expectation* of being paid and that, *after* he had paid out his stake and achieved his "certain outcome," Fryman, a third party, in fact, paid him. It argues that Winden's expectation, combined with the actual pay-off, constituted gambling. It also argues that, if the exchange constituted gambling, then defendant promoted gambling within the meaning of the last sentence of ORS 167.117(10) because, as the sole person in charge, he had "control or right of control over the premises" and permitted the

---

[2] ORS 167.117(4) provides:

" 'Gambling' means that a person stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under the control or influence of the person, upon an agreement or understanding that the person or someone else will receive something of value in the event of a certain outcome."

[3] ORS 167.117(10) defines "promotes gambling" to mean, in part,

"that a person, acting other than as a player, engages in conduct that materially aids any form of gambling. Conduct of this nature includes, but is not limited to, conduct directed toward the creation or establishment of the * * * activity involved, toward the acquisition or maintenance of premises, paraphernalia, equipment or apparatus therefor, toward the solicitation or inducement of persons to participate therein * * *. A person promotes gambling if, having control or right of control over premises being used with the knowledge of the person for purposes of gambling, the person permits the gambling to occur or continue or makes no effort to prevent its occurrence or continuation."

gambling to occur. It contends that what defendant knew was sufficient to make him liable for promoting gambling under *State v. Langan, supra.*

The state argues alternatively that, if the exchange did not constitute illegal gambling, defendant would still be liable under ORS 167.117(10), because he allowed a payment for winning to occur that tended toward "creation or establishment" of a cash payoff game or was a "solicitation or inducement of persons to participate" in a cash payoff game. Although there was no evidence that defendant knew that Fryman had previously bought credit coupons from other players, the state contends that defendant can be liable for promoting gambling if he knew such a transaction took place even once and allowed it to occur.

■ To be guilty of promoting gambling in the second degree, defendant must knowingly have promoted or profited from unlawful gambling, ORS 167.122, and the state must prove that defendant knew facts or conditions that made the gambling unlawful. *State v. Langan, supra,* 293 Or at 660. Defendant clearly did not profit from gambling in this case.

■ There was no evidence that defendant promoted unlawful gambling. Winden did not have an agreement or understanding with defendant or anyone else at the Fog Horn Tavern *before* he put his quarters in the poker machine that he would be paid money if he won free games. Defendant did not promote unlawful gambling, because Winden's only gambles were, first, that he would win free games and, second, that he would be able to convince somebody to buy them. In *State v. Langan, supra,* the Supreme Court rejected the view that someone could be liable under ORS 167.122 for aiding just "any form of gambling." 293 Or at 660. Furthermore, it was not shown that defendant knew that Fryman had previously paid other patrons for their free games. Therefore, there was no evidence that defendant controlled the premises knowing that they were used for purposes of gambling or that he induced people to gamble.

Reversed.